UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| GUMMYBEAR INTERNATIONAL, INC.,<br><br>        Plaintiff,<br><br>   v.<br><br>(1)   SOONOVA, LLC;<br>(2)   ANHUI RON.VE.XIN INTERNATIONAL TRADE CO., LTD.;<br>(3)   JINHUA HAIRONG IMPORT AND EXPORT CO., LTD. A/K/A BELO TEMPO;<br>(4)   SHANGHAI CHEERON INDUSTRIAL CO., LTD.;<br>(5)   SHENZHEN DOULUO E-COMMERCE CO., LTD.;<br>(6)   SHENZHEN JI MI TECHNOLOGY CO., LTD.;<br>(7)   SHENZHEN LECHI CREATIVE INDUSTRIAL CO., LTD.;<br>(8)   SHENZHEN LEVIN PLUSH TOYS CO., LTD. A/K/A LEVIN PLUSH TOYS FACTORY;<br>(9)   SHENZHEN TOYSKING INDUSTRIAL CO., LTD.;<br>(10) SHENZHEN TUOYI ELECTRONIC COMMERCE CO., LTD.;<br>(11) SUZHOU SHENGBEI ELECTRONIC TECHNOLOGY CO., LTD.;<br>(12) YANGZHOU GUAN YUE HOUSEWARE CO., LTD.;<br>(13) YIWU ALI TOY CO., LTD.;<br>(14) WUHAN XIBAO PURCHASE ELECTRONIC COMMERCE COMPANY, LTD. A/K/A HOUZIME STORE (TRADER);<br>(15) YIWU XIAOYA E-COMMERCE FIRM A/K/A KANICE STORE;<br>(16) YIWU YUYUE ELECTRONIC COMMERCE CO., LTD. A/K/A LUOYSER LYCG PLUSH-TOY STORE (TRADER);<br>(17) ZHENGZHOU PANEN TRADING CO., LTD. A/K/A HAPPY TIME STORE STORE (TRADER);<br>(18) HAIKOUYEXINGCHENDIANZISHANGWUYOUXIANGONGSI (TUMPETY STORE ON AMAZON); | Civil Action No. 25-CV-4832<br><br>**FILED UNDER SEAL** |

(19) CHONGQING DIANDIANXING SHANGYEGUANLI YOUXIANGONGSI (VERCICO STORE ON AMAZON);
(20) OLYLIN DBA SELL WORLDER ON DHGATE.COM;
(21) TIME_BROCADEL ON DHGATE.COM;
(22) CHIURE-BRACELET ON EBAY;
(23) FANREK.COM;
(24) HOVERKARU_STORE ON EBAY;
(25) TOPQUALITYHUB ON EBAY;
(26) TUMPETY - GOGAILEN ON RETAILMARKET.NET;
(27) YANGZHOU ROUND TOY CO., LTD.;
(28) DONGGUAN JUN OU TOYS CO., LTD.;
(29) AMI VENTURES INC;
(30) TIANDI ON WAREHOUSES OVERSTOCK;
(31) XEFUU ON WAREHOUSE OVERSTOCK;
(32) TUMPETY ON WAREHOUSES OVERSTOCK;
(33) YAOQI;
(34) AIPENGRY A/K/A HEFEIJINGMAIDIANZISHANGWUYOUXIANGONGSI (YAOQI BRAND);
(35) BIG TIPPER A/K/A YIWUSHIJIAYANGDIANZISHANGWUYOUXIANGONGSI (YAOQI BRAND);
(36) HARBROT TOYS CO., LTD;
(37) EIOYUMY;
(38) LELEPAI A/K/A SHENZHENSHILELEPAIKEJIYOUXIANGONGSI (EIOYUMY BRAND);
(39) FTZOIIYV;
(40) SHARP COW A/K/A SHENZHENSHI ANUOSIKEJIYOUXIANGONGSI (FTZOIIYV BRAND);
(41) PPWOUU A/K/A XIANGYANGSHIZHENJIAMAOYIYOUXIANGONGSI, (756HUYTG BRAND);
(42) SHENZHEN SUSHENG CROSS-BORDER TRADE CO., LTD. A/K/A DISNEY MONOPOLY STORE;
(43) SHENZHEN JUN YE TRADING CO., LTD. A/K/A SHOP1104339520 STORE ON ALIEXPRESS;

(44) FOSHAN MAIGU ELECTRONIC COMMERCE CO., LTD. A/K/A SHOP1103939481 STORE AND SHOP1103953201 STORE ON ALIEXPRESS;

(45) FOSHAN FENGSHAO ELECTRONIC COMMERCE CO., LTD. A/K/A SHOP1104033050 STORE ON ALIEXPRESS;

(46) GUANGZHOU ZHONGLIAMUSEMENT EQUIPMENT CO., LTD;

(47) ONLINE MEGA STORES D/B/A PLUSHSTORE.COM;

(48) MOXE STORE ON WISH.COM;

(49) EVERYMARKET, INC. – VERCECO DOLL;

(50) IBSPOT;

(51) TOYTOOTH - VERCECO DOLL;

(52) XHTANG (BRAND MANUFACTURER);

(53) PIVIWN A/K/A CHENGDOUSHIHONGHENGCHANGCHANGGONGYIPINYOUXIANGONGSI (XHTANG BRAND);

(54) BLEAHEART A/K/A SHENZHENBOLANTONGXINKEJIYOUXIANGONGSI

(55) CHENGYU (BRAND MANUFACTURER);

(56) FLORASUN A/K/A XUANQINGHUYU(QUANZHOU)WENHUACHUANMEI YOUXIANGONGSI;

(57) DONGGUAN PULMAN TOYS CO., LTD A/K/A PULEMAN07 STORE;

(58) YIWU ALLO TRADING CO., LTD;

(59) ANYIZHINENG A/K/A FOSHANQUANYIZHINENGJIAJUYOUXIANGONGSI;

(60) DHGATE - CONG08;

(61) MR. LINTAO – WALMART; and

(62) HAILE COZZIE SOLES LLC,

Defendants.

[PROPOSED] SEALED TEMPORARY RESTRAINING ORDER

Plaintiff Gummybear International, Inc. ("GBI" or "Plaintiff") filed an *Ex Parte* Motion for Entry of A Temporary Restraining Order and other Relief ("TRO Application") seeking: i) a

temporary restraining order ("TRO") against Defendants (as described in Schedule A attached to the Complaint, "Defendants"), enjoining Defendants from offering for sale or selling counterfeit products (the "Counterfeit Products") bearing, using, or infringing upon Plaintiff's copyright registrations and trademark registration; ii) a temporary restraint of certain of Defendants' assets, described below, to preserve Plaintiff's right to an equitable accounting; iii) expedited discovery allowing Plaintiff to inspect and copy Defendants' records relating to the sale of Counterfeit Products, as well as of Defendants' financial accounts; iv) permitting bifurcated service of process of the TRO application; and v) ordering Defendants to show cause why a preliminary injunction should not issue on the return date of the Application.  Plaintiff filed the TRO Application against the Defendants, who are the operators of the interactive, e-commerce stores and online marketplace accounts, as identified in Schedules A, B and C to the Complaint (hereinafter, "Schedule A," "Schedule B," and "Schedule C").  After reviewing the TRO Application and the accompanying record, including the Declarations submitted by Jurgen Korduletsch and Russell Bogart, the Court makes the following findings of fact and conclusions of law:

## **PRELIMINARY FACTUAL FINDINGS & CONCLUSIONS OF LAW**

1.  GBI is a content production company that created Gummibär, a singing and dancing animated gummy bear character.  GBI is a corporation duly organized and existing under the laws of the State of New Jersey, with its principal place of business located in New Jersey.

2.  In 2006, the song "*I am a Gummy Bear* (*The Gummy Bear Song*)," and then a music video of the same name, became viral internet sensations first in Europe and then throughout the United States and the world.

3.  GBI spent considerable resources developing the Gummibär character to feature in a music video for the *Gummy Bear Song*.

4. As created by GBI, Gummibär is a green anthropomorphic gummy bear, wearing yellow shorts with white stripes in the same configuration, with white shoes with two lines on top constituting laces and yellow patches on the side of the shoes, with a partially eaten left ear, a circular black nose, an open mouth with a small red tongue on the bottom left corner of the mouth next to a single tooth on the bottom of the mouth and to the left of the tongue.

5. The video for the *Gummy Bear Song* and its Spanish version have 3.2 billion and 1.2 billion views on YouTube respectively. GBI also produces an animated web series titled *Gummibär and Friends* which is available on the official Gummibär YouTube channel along with other videos and content. In May 2021, GBI's content on YouTube surpassed 20 billion content views.

6. In addition to producing video and music content, GBI manufactures and sells Gummibär merchandise, including but not limited to plush Gummibär toys.

7. GBI is the owner of registered copyrights relating to the *Gummy Bear Song* and the Gummibär character. GBI is the owner of the following Copyright Registrations, a copy of which are attached to the Complaint as **Exhibit 1**: SR00000700872 covering the Sound Recording and Music for *Gummibär – I Am Your Gummy Bear*; SR00000700919 covering the Sound Recording and Music for *Gummibär – Ich Bin Dein Gummibär*; and Pau003658316 covering the Motion Picture *The Yummy Gummy Search for Christmas* (collectively, the "GBI Works").

8. GBI also owns the United States Registration for the Gummibär Mark (Trademark Registration Number 4,335,076), a copy of which is attached to the Complaint as **Exhibit 2**. The GBI Trademark Registration covers numerous uses including but not limited to toys and playthings covered by Class 28.

9. The Gummibär Mark is currently in use in commerce in connection with the sale of a variety of products sold by GBI, including but not limited to plush dolls.

10. Defendants have conspired with each other to sell counterfeit plush Gummibär dolls that play a thirty-seven-second long recording of the *Gummy Bear Song* ("Counterfeit Products").

11. Many of the Defendants are E-commerce sellers ("Sellers"), who are selling the Counterfeit Products directly to consumers in the United States through different internet stores, which are accessible on the major e-commerce platforms such as Amazon.com ("Amazon"), Walmart.com ("Walmart"), eBay.com ("eBay"), and AliExpress.com ("AliExpress").

12. Additional Defendants consist of manufacturers and wholesalers, who sell the Counterfeit Products in bulk to Sellers and who do not sell the Counterfeit Products directly to individual consumers ("Manufacturers"). The Manufacturers advertise their bulk sale of the Counterfeit Products on the business-to-business ecommerce platforms of Alibaba.com ("Alibaba") or MadeInChina.Com ("MIC") (together with the stores on e-commerce platforms described in paragraph 11 above, "Defendants' Storefronts").

13. Defendants are not and have never been authorized by Plaintiff to exploit Plaintiff's trademark and copyrights pertaining to Gummibär.

14. Absent the granting of Plaintiff's *ex parte* application for relief, Plaintiff will continue to suffer immediate and irreparable harm consisting of the loss of customer goodwill and the dissipation of assets:

    a. The Defendants will continue to sell Counterfeit Products that are inferior and/or dilute Plaintiff's brand.

b. Online stores flooding the United States market with the Counterfeit Products will continue to proliferate on the major e-commerce platforms which sell the Counterfeit Products direct to U.S. consumers.

c. The sale of Counterfeit Products is likely causing and will continue to cause consumer confusion that weakens GBI's brand recognition and reputation. Consumers who mistakenly believe that the Counterfeit Products they purchased originated from GBI will believe that GBI offers low-quality products, with poor customer service, through fly-by-night ecommerce stores. This leads to a loss or undermining of GBI's reputation and goodwill.

d. Defendants' counterfeiting has undermined, and threatens to continue to undermine, GBI's efforts to arrange for the legitimate distribution of its products through retail stores.

e. Absent an ex parte Order, Defendants could and would likely move assets from accounts based in the United States to offshore accounts beyond the jurisdictional reach of the Court.

15. The consideration of the balance of hardships militates in favor of issuing the TRO. As set forth above, Plaintiff will continue to suffer irreparable harm to its reputation, business and goodwill absent an injunction. On the other hand, Defendants will not suffer a legitimate hardship if compelled to refrain from selling Counterfeit Products.

16. The public interest favors the issuing of the TRO because there is a strong public interest in protecting the public from being deceived into purchasing counterfeit and infringing products.

17. Plaintiff has not publicized its request for a TRO in any way.

18. The method of service of the TRO Application on the Defendants proposed by Plaintiff is reasonably calculated to result in Defendants' receipt of the TRO Application because Defendants conduct business extensively through their e-commerce platforms.

19. District courts "have the authority to issue a prejudgment asset restraint injunction in favor of plaintiffs seeking an accounting against allegedly infringing defendants in Lanham Act cases." *Gucci Am. v. Bank of China*, 768 F.3d 122, 132 (2d Cir. 2014). Plaintiff has demonstrated the existence of good cause for granting an asset freeze order against Defendants because their blatant copyright infringement and counterfeiting makes it likely that Defendants will dissipate and hide their assets overseas if provided with advance notification of the TRO Application.

20. Before Defendants are notified of the issuance of this TRO and Asset Freeze Order, Plaintiff must be able to provide the Financial Institutions and Third Party Service Providers with sufficient time to freeze the Defendants' accounts and preserve the Defendants' records. Otherwise, Defendants could attempt to frustrate the Asset Freeze Order and TRO before the Financial Institutions and Third Party Service Providers could implement those Orders. Five (5) days provides the Financial Institutions and Third Party Service Providers with sufficient time to implement this Court's Asset Freeze Order and TRO.

## ORDER

Based on the foregoing findings of facts and conclusions of law, Plaintiff's TRO application is hereby **GRANTED** as follows.

**IT IS HEREBY ORDERED that:**

1. Defendants, their officers, agents, servants, employees, attorneys, and all persons acting for, with, by, through, under, or in active concert with them are temporarily and preliminarily enjoined and restrained from:

    a. Using the Gummibär Mark or any reproduction, counterfeit, copy or colorable imitation of the Plaintiff's mark in connection with the distribution, advertising, offer for sale and/or sale of merchandise that is not the genuine products of the Plaintiff;

    b. passing off, inducing or enabling others to sell or pass off any Counterfeit Products as genuine products made and/or sold by the Plaintiff;

    c. committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

    d. further infringing the Plaintiff's mark and damaging Plaintiff's goodwill;

    e. competing unfairly with Plaintiff in any manner; or

    f. shipping, delivering, holding for sale, distributing, returning, transferring or otherwise moving, storing or disposing of in any manner products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff

to be sold or offered for sale, and that bear the Gummibär Mark or any reproductions, counterfeit copies, or colorable imitations thereof.

2. Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them are temporarily and preliminarily enjoined and restrained from:

    a. Directly or indirectly infringing any copyrighted work that is owned or controlled by Plaintiff ("Plaintiff's Works");

    b. shipping, delivering, holding for sale, distributing, returning, transferring or otherwise moving, storing or disposing of in any manner products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and protected by the Plaintiff's Copyright or any reproductions, counterfeit copies, or colorable imitations thereof; or

    c. enabling, facilitating, permitting, assisting, soliciting, encouraging or inducing others to directly or indirectly infringe Plaintiff's Works, Plaintiff's Gummibär Mark, and/or manufacture, import, distribute, offer for sale and/or sell counterfeits of Plaintiff's Works.

3. Defendants, their officers, directors, agents, servants, representatives, employees, successors, and assigns, and all those acting in concert or in participation with any of them who receive actual notice of this Temporary Restraining Order must immediately locate all accounts holding or receiving money or other assets owned, connected to, associated with, or utilized or held by any of Defendants' Online Storefronts ("Defendants' Accounts"), immediately cease transferring, withdrawing, or otherwise disposing of any money or other assets in Defendants' Accounts, and stop allowing such money or other assets in

Defendants' Accounts to be transferred, withdrawn, or otherwise disposed of pending further order of this Court. For purposes of this Temporary Restraining Order, Defendants' Accounts includes but is not limited to:

a.  Defendants' Accounts with any E-Commerce Platform identified in Schedule A, including Alibaba.com, AliExpress.com, Amazon.com, DHGate.com, EBay.com, Fanreck.com, Made-In-China.com, Sears.com, Warehouseoverstock.com, Walmart.com, Plushstore.com, Wish.com, Toytooth.com, Retailmarket.net or other Online Marketplaces ("Third-Party Service Providers"); and

b.  Defendants' accounts with banks, financial institutions, and credit card or other payment processing companies that have received money or other assets from Defendants' Accounts or otherwise received sales proceeds from Defendants' Storefronts, including, without limitation, Airwallex (HK) Limited, Airwallex US, LLC, AliExpress.com ("AliExpress"), AliPay, Amazon.com, Inc. ("Amazon"), Amazon Pay, Ant Financial Services Group ("AntFinancial"), Community Federal Savings Bank, eBay Inc. ("eBay"), ecrater.com ("eCRATER"), Focus Technology Co., Ltd. ("MadeInChina"), PayPal, Inc. ("PayPal"), Payoneer Global, Inc. ("Payoneer"), Stripe, Inc. ("Stripe"), and Context Logic, Inc. d/b/a/ Wish.com ("Wish"), or other merchant account providers, payment providers, third-party processors, and credit card associations (e.g., MasterCard and VISA) (collectively, "Financial Institutions").

    c. Defendants and those in privity with Defendants and with notice of this injunction shall within twenty-four (24) hours of receipt of such notice freeze all access of Defendants to any and all financial accounts associated with the Defendants' Accounts, by temporarily disabling these accounts and making them inactive and inaccessible to Defendants, and non-transferrable pending further order from this Court;

    d. The Asset Freeze Order does not apply to Defendants Everymarket, Inc., IBSpot, Inc., and Haile Cozzie Soles LLC.

4. Any Third-Party Service Provider or Financial Institution with actual notice of this Order who is providing services for any of the Defendants, or in connection with any of Defendants' Storefronts, shall, within seven (7) calendar days after receipt of such notice, provide to Plaintiff **expedited discovery**, limited to copies of documents and records in such person's or entity's possession or control sufficient to determine:

    a. the identities and locations of Defendants, their officers, agents, servants, employees, attorneys, and any persons acting in active concert or participation with them, including all known contact information and all associated e-mail addresses;

    b. the nature of Defendants' operations and all associated sales, methods of payment for services, and financial information, including, without limitation, identifying information associated with the Online Marketplaces and Defendants' financial accounts, including Defendants' sales and listing history related to their respective Online Marketplaces; and

   c. any financial accounts owned or controlled by Defendants, including their officers, agents, servants, employees, attorneys, and any persons acting in active concert or participation with them, including such accounts residing with or under the control of any banks, savings and loan associations, payment processors or other any Financial Institution.

5. Those with notice of this Order, including the Third Party Service Providers, shall within seven (7) calendar days after receipt of such notice, disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the Plaintiff's trademark or copyrights.

6. Any Third Party Service Providers or Financial Institution shall, within 2 calendar days of receipt of this Order:

   a. Locate all accounts and funds connected to Defendants, including but not limited to, any financial accounts connected to (i) the information listed in Schedules A – C, or (ii) any email address provided by Defendants to the Financial Institution with respect to the operation of their account;

   b. restrain and enjoin any such accounts or funds from transferring or disposing of any money or other of Defendants' assets until further order by this Court or until the Order expires, whichever occurs earlier.

   c. This Asset Freeze Order does not apply to the following Defendants: IBSpot, Inc., Everymarket, Inc., and Haile Cozzie Soles LLC.

**IT IS FURTHER ORDERED THAT:**

7. Pursuant to ~~Fed. R. Civ. P. 4(f)(3)~~*, Plaintiff may provide notice of ~~the proceedings~~ this Temporary Restraining Order and any proceedings concerning a Preliminary Injunction hearing that may follow ~~in this case~~ to Defendants ~~(except for Soonova, LLC, Ami Ventures, Inc., Toytooth.com,~~

---

* Rule 4(f) of the Federal Rules of Civil Procedure and Articles 1 and 15 of the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Hague Convention")

13

~~Everymarket, Inc., IBSpot, Inc., and Haile Cozzie Soles LLC), including notice of the preliminary injunction hearing, and any future motions,~~ by:

    (A) providing Defendants with a link to a secure website (such as Dropbox.com or other File Transfer Protocol ("FTP") site) PDF copies of: (1) this Ex Parte Order; (2) the Summons and Complaint; and (3) all papers filed in support of Plaintiffs' Application and

    (B) sending an email with a link to said website to the email addresses identified in Schedule B and to any email addresses provided for Defendants by third parties. Alternately, Plaintiff can deliver a message to the Defendants, if no email addresses are known, through the system for communications established by the Third Party Service Providers on their respective platforms, notifying the Defendants that this action has been commenced against them in this Court and providing them with the link to the same secure website where each Defendant will be able to download PDF copies of this Order, the Summons and Complaint, and all papers filed in support of Plaintiff's application.

*For avoidance of doubt, this Paragraph does not apply to service of the summons and Complaint.*

8. The alternative service by electronic means ordered herein shall be made within ten (10) days from the date of this Ex Parte Order. Plaintiffs shall properly file proof of such service on the docket.

9. Plaintiff shall post security in the amount of $25,000 by corporate surety bond, cash, credit card, or a certified or attorney's check. *Given the number of Defendants, the Court finds that a lower bond, as requested by Plaintiff, would be insufficient to protect against the risk of improper injunction.*

    **IT IS FURTHER ORDERED THAT** upon two (2) business days' written notice to the Court and Plaintiff's counsel, any Defendant or restrained third party may appear and

move for the dissolution or modification of the provisions of this Temporary Restraining Order upon an appropriate evidentiary showing.

**IT IS FURTHER ORDERED THAT** Defendants shall appear on ~~____, 2025~~ *July 16, 2025* at ~~10:00 a.m., or as soon thereafter as counsel can be heard,~~ *11:00 a.m.* in Courtroom __1105__ of the United States District Court for the Southern District of New York, __40 Foley Square__, New York, New York 10007, to show cause why an order should not be entered pursuant to Federal Rules of Civil Procedure 64 and 65, the Copyright Act (17 U.S.C. § 502(a)), the Lanham Act (15 U.S.C. § 1116), and the Court's equitable authority, granting Plaintiff a preliminary injunction enjoining Defendants, their officers, directors, agents, servants, representatives, employees, successors, and assigns, and all those acting in concert or in participation with any of them, in a manner substantially similar to the relief provided in the Temporary Restraining Order above, pending resolution of this case or further order of this Court.

**IT IS FURTHER ORDERED THAT** opposing papers, if any, shall be filed electronically with the Court and served on Plaintiff's counsel by *by July 2, 2025* ~~delivering copies to the office of Kagen, Caspersen & Bogart PLLC at 551 Madison Avenue, 12th Floor, New York, New York 10022~~ *filing them on ECF*.  Plaintiff shall file any Reply papers on or before ____*July 9*____, 2025. Defendants are hereby given notice that failure to attend the hearing scheduled by this Order may result in confirmation of the restraints authorized herein, immediate issuance of the prayed-for Preliminary Injunction to take effect immediately upon expiration or dissolution of the within Temporary Restraining Order, and shall otherwise extend relief for the pendency of this litigation upon the same or similar terms and conditions as comprise this Temporary Restraining Order.

15

**IT IS FURTHER ORDERED THAT** this Temporary Restraining Order without notice is entered at _____ A.M. on this  13  day of   June   and shall remain in effect for ~~fourteen (14)~~ 35 calendar days. Any motion to extend this Order must be filed by  July 14, 2025 . The Court finds, pursuant to Rule 65(b)(2) of the Federal Rules of Civil Procedure, that good cause exists to extend this temporary restraining order because, in the Court's experience, service in this type of case is complex and unlikely to be effectuated within fourteen days.

Plaintiff shall file a letter regarding the continuing need for sealing when (1) there is no longer a need to keep the matter under seal or (2) within fourteen days, whichever is earlier.

SO ORDERED.

The Clerk of Court is directed to file this Order with viewing restricted to the Court and the filing party.

_____

Dated:  June 13 , 2025

New York, New York

16