**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

GUMMYBEAR INTERNATIONAL, INC.,

Plaintiff,

v.

SOONOVA, LLC, ANHUI RON.VE. XIN
INTERNATIONAL TRADE CO., LTD., etc.,

Defendants.

Case No.: 1:25-cv-4832

**DEFENDANT IBSPOT INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

**TABLE OF CONTENTS**

1

INTRODUCTION                                                                    5

PRELIMINARY STATEMENT                                                           5

ARGUMENT                                                                        8

I.      PLAINTIFF HAS FAILED TO STATE A CLAIM DUE TO PLAINTIFF'S LUMPING
        TOGETHER THE ACTIONS OF ALL 67 DEFENDANTS………………………    9

II.     PLAINTIFF HAS FAILED TO PLEAD A CAUSE OF ACTION WITH RESPECT TO
        TRADEMARK INFRINGEMENT AND COUNTERFEITING FOR DEFENDANT THAT
        SOLD COUNTERFEIT PRODUCTS WITH THE  "Gummibär Mark"………………    9

        A.      Plaintiff cannot establish that Defendant was the "origin" of the TUMPETY Doll or
                that Defendant derived any direct financial benefit from the alleged infringement;
                therefore, Plaintiff's trademark infringement and copyright claims cannot
                stand………………...………………………...…………...……………    10

        B.      Plaintiff cannot establish either prong of the Second Circuit's test for trademark
                counterfeiting and has failed to state a claim for trademark counterfeiting……    13

        C.      Plaintiff Has no Legal Ground for Trademark "Gummy Bear" and Cannot Establish
                Enforceable Trademark Rights in "Gummy Bear," and Defendant's Descriptive Use
                Does Not Constitute Infringement…………………………………………...    14

III.    PLAINTIFF HAS FAILED TO STATE CONTRIBUTORY AND VICARIOUS
        TRADEMARK INFRINGEMENT.................................................................... 15

IV.     PLAINTIFF HAS FAILED TO ALLEGE THE EXISTENCE OF A CIVIL CONSPIRACY
        OF SELLING COUNTERFEIT PRODUCTS…………………………………………    18

V.      PLAINTIFF HAS FAILED TO ALLEGE CLAIMS OF UNFAIR COMPETITION AS IT
        CANNOT ESTABLISH THAT DEFENDANT ACTED IN BAD FAITH……………    19

VI.     PLAINTIFF HAS FAILED TO ALLEGE STATUTORY DAMAGE CLAIMS UPON
        TRADEMARK AND COPYRIGHT INFRINGEMENT AS THE ELEMENTS OF
        WILLFUL CONDUCT ARE MISSING IN THIS CASE…………………………    20

        A.      Defendant has not concealed information or misled the court or Plaintiff about its
                sales activity and revenue…………………………………………………    22

        B.      Defendant has no willfulness of infringement, given consideration of the length of the
                sale activity and its response upon the first legal notice by the Plaintiff………    23

        C.      Defendant has no defiance of attempts at deterrence, and the size of the operation is
                minimal compared with the common standard of granting statutory damages…    24

CONCLUSION                                                                      25

## TABLE OF AUTHORITIES

**Cases**                                                                    **Page**

*Abacus Fed. Sav. Bank v. Lim*, 905 N.Y.S.2d 585, 588 (2010)……………………………...12

*ACR Sys., Inc. v. Woori Bank*, 232 F. Supp. 3d 471, 478–79 (S.D.N.Y. 2017)…………...7, 12

*Arista Records LLC v. Usenet.com, Inc.*, 633 F.Supp.2d 124, 156-57 (S.D.N.Y. 2009).....7, 12

*Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001)…………………………6, 8

*Boehner v. City of Rochester*, 609 F. Supp. 3d 220, 229 (W.D.N.Y. 2022)………………6, 8

*Dastar Corp. v. Twentieth Century Fox Film Corp.,* 539 U.S. 23, 31 (2003)……………8, 10

*EMI Christian Music Group, Incorporated v. MP3tunes, LLC,* 844 F.3d 79, 99 (2d Cir.

2016) …………………………………………………………………………………….…..7, 11, 12

*Ferro v. Ry. Express Agency, Inc.*, 296 F.2d 847, 851 (2d Cir. 1961)……………………...6, 8

*Gucci Am., Inc. v. Gold Ctr. Jewelry*, 997 F. Supp. 399, 401(S.D.N.Y. 1998), <u>rev'd,</u> 158

F. Supp. 3d 631 (2d Cir. 1998)…………………………………………………………   15

*Heilbut v. Cassava Sciences., Inc.*, 778 F. Supp. 3d 551, 576 (S.D.N.Y 2025)……………12

*Kovkov v. Law Firm of Dayrel Sewell, PLLC*, 119 N.Y.S.3d 849, 849–50 (2020)……….7, 12

*N.A.S. Import, Corp. v. Chenson Enters., Inc.*, 968 F.2d 250, 252 (2d Cir. 1992)………...7, 14

*Sara Lee Corp. v. Bags of New York, Inc.*, 36 F. Supp. 2d 161, 166–69 (S.D.N.Y.

1999)…………………………………………………………………………………...8, 14-15

*Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995)…………………………………………..6, 8

*Soter Tech., LLC v. IP Video Corp.*, 523 F. Supp. 3d 389, 397 (S.D.N.Y. 2021)…...6, 7, 10, 13

*Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 107 (2d Cir. 2010)...........................................16,17

*Dish Network L.L.C. v. Siddiqi*, No. 18-CV-4397 (VB), 2019 U.S. Dist. LEXIS 193095,

 (S.D.N.Y. Nov. 6, 2019)..........................................................................................................17

*American Footwear Corp. v. Gen'l Footwear Co.*, 609 F.2d 655, 662 (2d Cir. 1979)........  17

*Schutte Bagclosures Inc. v. Kwik Lok Corp.*, 193 F. Supp. 3d 245, 286 (S.D.N.Y. 2016) ....  17

*Rosenfeld v. W.B. Saunders, 728 F. Supp.* 236, 249- 50 (S.D.N.Y. 1990)..............................  17

*Ltd. v. Mayborn USA, Inc.,* 898 F. Supp. 2d 634, 643........................................................  18

*CDC Newburgh Inc. v. STM Bags, LLC*, 692 F. Supp. 3d 205................................................18

**Statutes**                                                                                                    **Page**

17 U.S.C.§ 504(b).……………………………………………………………………….13

17 U.S.C. § 504(c) ………………………………………………………………………7, 13

17 U.S. Code § 504(c)(1) ………………………………………………………………….13

15 U.S.C. § 1114(1)(a) …………………………………………………………….6, 7, 9, 13

F.R.C.P 8(a) …………………………………………………………………………...6

Defendant Ibspot Inc. ("Ibspot" or "Defendant"), a corporation organized under the laws of New York, with its principal place of business in New York, submits this memorandum of law in support of its motion to dismiss the Second Amended Complaint [Document No. 68] filed by Plaintiff pursuant to F. R.C.P. 12(b)(6) and on the ground that Plaintiff has failed to state a claim upon which relief can be granted.

## INTRODUCTION

Defendant owns and operates an online store at https://ibspot..com. See Exhibit 1 - Declaration iso Motion to Dismiss - Def Ibspot Inc.¶3. Defendant is a corporation formed in New York with its principal place of business in New York. *Id*. The product at issue in this case was a TUMPETY branded doll(TUMPETY Doll) product manufactured by a third party with which Ibspot had a "dropshipping" relationship. *Id*.¶5 If one of the products had sold, Ibspot would have obtained the product from the third-party distributor and then shipped the product to the consumer. *Id*. By the date of this legal action, a total of one unit of the product at issue has been sold. *Id*.  The purchaser is the Attorney for the Plaintiff. See Exhibit 7 - Purchase order. As soon as Ibspot received notice of Plaintiff's alleged infringement claim, it immediately took down the listing. Exhibit 1 - Declaration iso Motion to Dismiss-Def Ibspot Inc.¶7. Plaintiff commenced this lawsuit in the Southern District of New York against Defendant, seeking injunctive relief and damages based on inter alia, copyright infringement, trademark counterfeiting, trademark infringement, and related claims.

## PRELIMINARY STATEMENT

First, Plaintiff's Complaint must be dismissed because it impermissibly lumps together the alleged actions of all sixty-seven defendants without distinguishing the conduct of any particular party. F.R.C.P 8(a) requires a "short and plain statement of the claim showing that the pleader is entitled to relief" sufficient to give each defendant fair notice of the claims against them. *See*

*Ferro v. Ry. Express Agency, Inc.*, 296 F.2d 847, 851 (2d Cir. 1961); *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995). Here, the Complaint provides no factual basis to discern which allegations, if any, pertain to which defendant. As the Second Circuit has made clear, complaints that "lump all the defendants together in each claim provid[ing] no factual basis to distinguish their conduct … fail[] to satisfy [the] minimum pleading standard." *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (summary order); see also *Boehner v. City of Rochester*, 609 F. Supp. 3d 220, 229 (W.D.N.Y. 2022). Because Plaintiff has not articulated specific allegations against individual defendants, the Complaint fails to state a claim upon which relief can be granted and must be dismissed as to the Defendant.

Second, Plaintiff's trademark infringement and counterfeiting claims against Defendant fails as a matter of law because the Complaint does not plausibly allege that Defendant made any "use in commerce" of Plaintiff's registered "Gummibär Mark" (Trademark Reg. No. 4335076), as required by 15 U.S.C. § 1114(1)(a). Plaintiff's allegations appear to rest on Defendant's sale of a TUMPETY Doll, yet there is no indication in the pleadings that the accused product, its packaging, or Defendant's website ever displayed or otherwise used the "Gummibär Mark" or any confusingly similar mark. A sustainable infringement claim must begin with factual allegations that the defendant actually used the protected mark. *See Soter Tech.*, *LLC v. IP Video Corp.*, 523 F. Supp. 3d 389, 397 (S.D.N.Y. 2021). In addition, Plaintiff has no legal ground to assert its trademark rights and protection for "Gummy Bear", and Defendant's use of "Gummy Bear" does not infringe Plaintiff's "Gummibär" mark. Because the Complaint fails to establish any "use in commerce" of its "Gummibär" mark by the Defendants, it does not state a cause of action for trademark counterfeiting, and dismissal is warranted.

Plaintiff also fails to allege how customers were drawn to Defendant's platform specifically because the TUMPETY Doll played the Gummy Bear Song. A direct financial interest requires that the infringing material acts as a draw to attract customers to the defendant's service. *See EMI Christian Music Group, Incorporated v. MP3tunes, LLC,* 844 F.3d 79, 99 (2d Cir. 2016). In addition, Plaintiff fails to allege how Defendant is the producer of the tangible goods at issue. The Lanham Act's "origin of goods" provision protects against misrepresentation of who manufactured the physical product being sold, not misrepresentation regarding the authorship of underlying copyrighted content incorporated into that product. *See Dastar Corp. v. Twentieth Century Fox Film Corp.,* 539 U.S. 23, 31 (2003). Finally, Plaintiff has offered no evidence that customers purchased the TUMPETY Doll from Defendant because it played the Gummy Bear Song rather than simply wanting a toy bear, failing to establish how Defendant derived a direct financial benefit from any alleged infringement. Courts have rejected mere speculation as to why customers may have made purchasing decisions where the plaintiff has "offered no evidence that customers' purchasing decisions were actually influenced by the copyrighted material." *See Arista Records LLC v. Usenet.com, Inc.,* 633 F.Supp.2d 124, 156-57 (S.D.N.Y. 2009). Because the Complaint fails to identify any such use, it does not state a cause of action for trademark infringement, and dismissal is warranted.

Third, Plaintiff's civil conspiracy claim must be dismissed because the Complaint fails to allege facts establishing the essential elements of such a claim. To plead civil conspiracy under New York law, a plaintiff must allege: (1) an underlying tort, (2) an agreement among the conspirators, (3) an overt act in furtherance of the agreement, (4) intentional participation, and (5) resulting damages. *Kovkov v. Law Firm of Dayrel Sewell*, PLLC, 182 A.D.3d 418, 119 N.Y.S.3d 849, 849–50 (2020); *ACR Sys*., *Inc. v. Woori Bank*, 232 F. Supp. 3d 471, 478–79 (S.D.N.Y.

2017). Here, Plaintiff offers only conclusory assertions that all defendants "conspired with each other" to sell counterfeit products but alleges no facts demonstrating the existence of any agreement involving Ibspot . Moreover, because Plaintiff has failed to state a viable underlying claim of trademark infringement with respect to Ibspot, the conspiracy claim necessarily fails. Absent well-pleaded allegations of an agreement or an actionable predicate tort, Plaintiff's civil conspiracy claim cannot stand and must be dismissed.

Lastly, Plaintiff's demand for statutory damages under the Lanham Act and Copyright Act must be rejected because the Complaint fails to allege facts supporting the essential element of willful infringement. Statutory damages under 17 U.S.C. § 504(c) require proof that infringement was committed willfully, while trademark statutory damages similarly depend on allegations of "use in commerce" of Plaintiff's registered mark, 15 U.S.C. § 1114(1)(a). *See Soter Tech.*, *LLC v. IP Video Corp.*, 523 F. Supp. 3d 389, 397 (S.D.N.Y. 2021); *N.A.S. Import, Corp. v. Chenson Enters.*, *Inc.*, 968 F.2d 250, 252 (2d Cir. 1992). Here, the Complaint identifies no facts suggesting that Defendant ever used the "Gummibär Mark" or engaged in willful copyright infringement. To the contrary, Defendant promptly removed the challenged listing upon notice, disclosed its minimal sales (a single unit at $18.99), and cooperated in providing records, demonstrating an absence of willfulness. Courts consider factors such as concealment, duration of infringement, response to cease-and-desist letters, deterrence, and scale of operation in determining statutory damages. *Sara Lee Corp. v. Bags of New York, Inc.*, 36 F. Supp. 2d 161, 166–69 (S.D.N.Y. 1999). None of these factors is present here. Because Plaintiff has not pleaded willful conduct, the statutory damages claim for trademark and copyright infringement cannot stand.

**ARGUMENT**

**I. PLAINTIFF HAS FAILED TO STATE A CLAIM DUE TO PLAINTIFF'S**

**LUMPING TOGETHER THE ACTIONS OF ALL 67 DEFENDANTS**

F. R. Civ. P. 8(a) requires that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "At a minimum, that a complaint gives each defendant 'fair notice of what the plaintiff's claim is and the ground upon which it rests. *Ferro v. Ry. Express Agency*, *Inc*., 296 F.2d 847, 851 (2d Cir. 1961); see also *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995).

The Complaint lists 67 different defendants. ECF. Document # 46. The Complaint fails to provide any ability to discern or distinguish which factual claims apply to which of the 67 different defendants in this case. ECF. Document # 46. "To be sure, a complaint that "lump[s] all the defendants together in each claim provid[es] no factual basis to distinguish their conduct .... fail[s] to satisfy [the] minimum [pleading] standard." *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (summary order) (internal quotations omitted). *Boehner v. City of Rochester*, 609 F. Supp. 3d 220, 229 [WDNY 2022].

For this reason, the Complaint fails to state a cause of action against Defendants. Defendant is entitled to know which specific facts of which specific counts apply to which of the specific defendants.

**II. PLAINTIFF HAS FAILED TO PLEAD A CAUSE OF ACTION WITH RESPECT**

**TO TRADEMARK INFRINGEMENT AND COUNTERFEITING FOR DEFENDANT**

**THAT SOLD COUNTERFEIT PRODUCTS WITH THE  "Gummibär Mark"**

Plaintiff's claims against the Defendant appear to arise out of Defendant's alleged sale of counterfeit products with the "Gummibär" mark with the U.S Registration Number 4335076(Gummibär Mark)(ECF-No.#68-57), claiming that "To exploit the goodwill, reputation

and fame of the Gummibär Mark and the copyrighted Gummy Bear Song and Gummy Bear Character, the Defendants have engaged in the manufacturing, importing, exporting, advertising, marketing, promotion, distributing, offering for sale and/or selling the Counterfeit Products to consumers throughout the United States, including in the state of New York, through their storefronts on major e-commerce platforms.".

**A.    Plaintiff cannot establish that Defendant was the "origin" of the TUMPETY Doll or that Defendant derived any direct financial benefit from the alleged infringement; therefore, Plaintiff's trademark infringement and copyright claims cannot stand**

Plaintiff alleges that Defendant attempted to pass off the TUMPETY Doll as an authorized product sponsored by Plaintiff by using images and product descriptions that reference the Gummy Bear Song. Under the Lanham Act, "origin of goods" refers to "the producer of the tangible goods offered for sale, not the author of the ideas or concepts embodied in those goods." *See Dastar Corp.*, 539 U.S. at 31. Plaintiff further alleges that Defendant is liable for copyright infringement because it sold the TUMPETY Doll, which plays the copyrighted Gummy Bear Song when activated. In addition, Plaintiff alleges that Defendant should have conducted diligence to determine whether the TUMPETY Doll was authorized, and that by using the same images and descriptions as the TUMPETY Store, Defendant had a direct financial interest in the infringement.

A defendant lacks a direct financial interest in infringement where the infringement material was not a customer draw, and plaintiffs must show a causal relationship between the infringing activity and any financial benefit the defendant reaps, demonstrated by evidence that the infringing content actually attracted customers or influenced purchasing decisions. *See EMI Christian Music Group, Inc.*, 844 F.3d at 99; *Arista Records LLC*, 633 F.Supp.2d at156-57.

In *Dastar*, the Supreme Court addressed whether uncredited copying of uncopyrighted works constitutes false designation of origin under the Lanham Act. The Court held that "the Lanham Act does not prevent the uncredited copying of uncopyrighted works, and the defendant's actions did not constitute false designation of origin under Section 43(a) of the Lanham Act." The Court clarified: "The most natural understanding of the 'origin' of 'goods' (the source of wares) is the producer of the tangible product sold in the marketplace." The Supreme Court emphasized that "origin of goods" refers to "the producer of the tangible goods offered for sale, not the author of the ideas or concepts embodied in those goods."

Here, Defendant sold a TUMPETY Doll product on its website, and there is no indication that the Defendant included the "Gummibär Mark" on the package of the product or the website page in the Complaint. Defendant did not manufacture the TUMPETY Doll or create the allegedly infringing content. The TUMPETY Doll was manufactured by a third party with which Defendant had a dropshipping relationship. Defendant merely facilitated the sale as an intermediary platform. Under *Dastar*, the "origin" of the goods is the actual manufacturer. This would be the third-party producer of the TUMPETY Doll, not Defendant. Defendant neither created the physical product nor embedded the copyrighted song in the doll. Therefore, Plaintiff cannot establish that Defendant engaged in false designation of origin, as Defendant was not the origin of the allegedly infringing goods within the meaning of the Lanham Act.

In *EMI Christian Music Group, Inc. v. MP3tunes, LLC*, the Second Circuit addressed whether an online music service provider had a direct financial interest in copyright infringement. *See EMI Christian Music Group, Inc. v. MP3tunes, LLC*, 844 F.3d 79, 99 (2d Cir. 2016). The court held that "[a]n obvious and direct financial interest in the exploitation of copyrighted materials ... may be established where infringing material acts as a draw to attract subscribers to a defendant's business, even if it is not the primary, or even a significant draw." *Id.* The court found that the plaintiff must demonstrate that the alleged infringing material

itself acted as a customer draw to the defendant's platform. *Id.* In *EMI Christian Music*, the court found sufficient evidence of direct financial interest where an employee testified that she and other employees "emphasized availability of free music" in connection with trying to get users to purchase the service. *Id.* at 100.

Here, Plaintiff alleges that Defendant "unilaterally attempted to arbitrage the infringing TUMPETY Doll by trying to sell it at a higher price by leveraging its much larger consumer base." However, Plaintiff fails to show that customers were drawn to Defendant's platform specifically because the TUMPETY Doll played the Gummy Bear Song. Unlike in *EMI Christian Music*, where employees actively promoted free infringing music to drive subscriptions, there is no allegation that Defendant marketed the infringing song as a customer draw. According to the facts in the Motion to Dismiss, Defendant operated a general dropshipping marketplace, and the single unit sold was purchased by Plaintiff's own attorney, not an organic customer attracted by the infringing content. Therefore, Plaintiff has failed to establish that Defendant had a direct financial interest in any alleged infringement.

In *Arista Records LLC*, the court addressed whether a service provider had a direct financial interest in copyright infringement where users downloaded infringing content. *See Arista Records LLC.*, 633 F.Supp.2d at 156. The court found that the defendants earned a direct financial benefit from infringement because "infringing content certainly acts as 'a draw' for users to subscribe to Defendants' service." *Id.* The *Arista* court emphasized that defendants' revenues increased with download volume, and that defendants' own employees acknowledged that the availability of copyrighted material, including music, attracted users and generated profits. *Id.* at 156-57.

Here, Plaintiff alleges that Defendant "unilaterally attempted to arbitrage the infringing TUMPETY Doll by trying to sell it at a higher price by leveraging its much larger consumer base." However, unlike in *Arista*, where defendants' employees admitted that copyrighted

content attracted users and drove subscriptions, and where statistical evidence demonstrated massive infringement as the service's primary purpose, Plaintiff has provided no evidence that customers were actually influenced by the TUMPETY Doll's copyrighted content. In this case, Defendant operated a general e-commerce marketplace and sold only one unit of the product, which was purchased by Plaintiff's own attorney. There is no evidence that customers were drawn to Defendant's platform specifically because the doll played the Gummy Bear Song, or that the infringing content drove traffic or revenues to Defendant's service. Therefore, Plaintiff has failed to establish that Defendant had a direct financial interest in any alleged infringement.

For the reasons set forth above, Plaintiff cannot establish that Defendant was the "origin" of the TUMPETY Doll or that Defendant derived any direct financial benefit from the alleged infringement; therefore, Plaintiff's trademark infringement and copyright claims cannot stand.

### B. Plaintiff cannot establish either prong of the Second Circuit's test for trademark counterfeiting and has failed to state a claim for trademark counterfeiting

Under 15 U.S.C. §§ 1114(1)(a)-(b), 1125, the Lanham Act imposes liability on any person who, "in connection with the sale, offering for sale, or distribution of goods, uses a counterfeit of a registered mark or counterfeits such mark in advertising or packaging materials when such use is likely to cause confusion." Allstar Mktg. Grp., LLC v. 123 Beads Store, No. 19-CV-3184 (AJN), 2020 WL 5836423, at *3 (S.D.N.Y. Sept. 30, 2020).

The Second Circuit court applies a two-prong test for determining the trademark infringement and counterfeiting claims under the Lanham Act, "To prevail on a trademark counterfeiting or infringement claim under the Lanham Act, a plaintiff must establish that the infringed mark is valid and 'entitled to protection,' and that 'use of the allegedly infringing mark's likely to cause consumer confusion as to the origin or sponsorship' of the products to which it attached." [*15]  Cross Com. Media, Inc. v. Collective, Inc., 841 F.3d 155, 168 (2d Cir.

2016) (quoting Virgin Enters. Ltd. v. Nawab, 335 F.3d 141, 146 (2d Cir. 2003)). Mattel Inc. v. Chongqing Senjianan E-Commerce Co., Ltd., 2025 U.S. Dist. LEXIS 57915, *14-15. As a threshold matter, "A sustainable claim must establish that the defendant made 'use in commerce' of Plaintiff's trademark to begin with." *See* 15 U.S.C. § 1114(1)(a) (restricting the "use in commerce" of "a registered mark"); *Soter Tech*., *LLC v. IP Video Corp*., 523 F. Supp. 3d 389, 397 (S.D.N.Y 2021).

Here, Plaintiff owns one registered mark, the Gummibär Mark(Trademark Registration Number 4335076). This trademark consists of the wording of "Gummibär" over a design of an upright bear(drawing) balancing on its right foot. ECF-No.7, Exhibit 12. However, Ibspot never sold products that contain or use the Gummibär Mark or any allegedly similar mark. ECF No. 46-17. There is no indication that the Defendant included the Gummibär Mark on the package of the product or the website page in the Complaint. Defendant sold a TUMPETY Doll product on its website with a product listing title as "TUMPETY Gummy Bear Plush Green Singing Bear Toy Christmas Celebration Props Accompanying Toys Before Going to Bed(A5-JZ0167)". See Exhibit 2 - Webpage of Defendant's Product Sale listing. "TUMPETY" is a registered trademark (U.S. Reg. No. 6,819,995), owned by Shen Zhen Shi Sheng Shi De Ke Ji Co., Ltd. See Exhibit 3 - Trademark registration certificate for TUMPETY. There is no indication that Shen Zhen Shi Sheng Shi De Ke Ji Co., Ltd is affiliated with Plaintiff. Defendant's use of the "TUMPETY" trademark is plainly distinct from Plaintiff's Gummibär Mark. Accordingly, Plaintiff has failed to establish that Defendant infringed its registered Gummibär Mark.

**C. Plaintiff Has no Legal Ground for Trademark "Gummy Bear" and Cannot Establish Enforceable Trademark Rights in "Gummy Bear," and Defendant's Descriptive Use Does Not Constitute Infringement.**

Plaintiff might argue that Defendant's use of the descriptive phrase "Gummy Bear" constitutes "use in commerce" of Plaintiff's Gummibär Mark and is "likely to cause consumer

confusion as to the origin or sponsorship of the products." However, Plaintiff previously sought registration of a "Gummy Bear" mark (depicting a bear design) in Class 28 (toys) under U.S. Serial No. 77548079, filed on August 5, 2008.See Exhibit 4 – USPTO Record for Serial No. 77548079, at page 1.  That application was abandoned on April 2, 2009. *Id*. According to the Office Action issued by the United States Patent and Trademark Office("USPTO") on November 26, 2008, "Registration of the applied-for mark is refused because of a likelihood of confusion with the marks in U.S. Registration Nos. 3028169 and 3015335." See Exhibit 5 – Office Action for  "Gummy Bear", at page 3.  Specifically, Registration No. 3,028,169 for "Gummy Bears," covering toys in Class 28, is owned by Street Players Holding. See Exhibit 6 - Trademark Registration Certificate for Gummy Bears. Plaintiff has never responded to the above office action and its trademark application was abandoned.

As such, Plaintiff holds no enforceable rights in "Gummy Bear" or "Gummy Bears" and cannot assert trademark protection over those terms. Defendant's descriptive use of "Gummy Bear" therefore does not infringe Plaintiff's Gummibär Mark. Plaintiff once again fails to demonstrate that Defendant made any "use in commerce" of the Gummibär mark.

For the reasons set forth above, Because (1) Defendant made no "use in commerce" of the Gummibär mark, and (2) Defendant's TUMPETY Doll products are plainly distinct from Plaintiff's Gummibär mark, Plaintiff cannot establish either prong of the Second Circuit's test for trademark infringement or counterfeiting. Plaintiff has failed to assert the claim of trademark counterfeiting under the Lanham Act.


### III.PLAINTIFF HAS FAILED TO STATE CONTRIBUTORY AND VICARIOUS TRADEMARK INFRINGEMENT

For contributory trademark infringement liability to lie, a service provider must have more than a general knowledge or reason to know that its service is being used to sell counterfeit

goods. Some contemporary knowledge of which particular listings are infringing or will infringe in the future is necessary. *See Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 107 (2d Cir. 2010). "If a manufacturer or distributor intentionally induces another to infringe a trademark, or if it continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement, the manufacturer or distributor is contributorily responsible for any harm done as a result of the deceit." *See Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 106 (2d Cir. 2010) (quoting *Inwood Labs., Inc. v. Ives Labs.*, Inc., 456 U.S. 844, 854 (1982)).

Applying these principles to the present case, Plaintiff's allegations fail to state a plausible claim for contributory trademark infringement. Under Inwood and Tiffany, a seller or online service provider is contributorily liable only if it (1) intentionally induces another to infringe a trademark, or (2) continues to supply its product or service to one whom it knows or has reason to know is engaging in trademark infringement.

Here, Plaintiff alleges neither circumstance. The Complaint does not claim that Ibspot (or Everymarket) intentionally induced any third party to infringe Plaintiff's mark, nor that it continued to provide products or services to any party after learning of any alleged infringement. Instead, Plaintiff merely asserts in conclusory fashion that "Defendants had knowledge of the infringement or were willfully blind to it while enabling it to occur." See Second Amended Complaint ¶ 153, Gummybear Int'l, Inc. v. Soonova, LLC, No. 1:25-cv-04832-JMF (S.D.N.Y. filed Oct. 21, 2025). Such conclusory allegations fall squarely within the "general knowledge or reason to know" category that *Tiffany* expressly held insufficient to establish contributory liability. *See Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 107 (2d Cir. 2010).

Plaintiff also pleads no facts demonstrating that Ibspot had any "contemporary knowledge of which particular listings [were] infringing or [would] infringe in the future." See Second Amended Complaint ¶ 152-157, Gummybear Int'l, Inc. v. Soonova, LLC, No. 1:25-cv-04832-JMF (S.D.N.Y. filed Oct. 21, 2025). Nor does Plaintiff allege that Ibspot had any contractual,

supervisory, or profit-sharing relationship with any manufacturer or seller of counterfeit goods. To the contrary, the alleged sale involved only a single transaction, and the only alleged transaction was initiated by Plaintiff's counsel, after which the product was promptly removed from the platform. *See* Exhibit 1 and 7. Such isolated and promptly corrected conduct cannot plausibly establish the intentional inducement or continued supply required under *Inwood* and *Tiffany.* Because Plaintiff's contributory trademark infringement claim relies solely on conclusory allegations without factual support showing intentional inducement, specific knowledge, or continued supply after notice, it fails to meet the pleading standards of Twombly and Iqbal.

Accordingly, Plaintiff's Fourth Cause of Action for contributory trademark infringement should be dismissed in its entirety pursuant to Fed. R. Civ. P. 12(b)(6).

Furthermore, Plaintiff also fails to state a claim for vicarious trademark infringement. Mere knowledge of the primary actor's wrongful conduct does not establish liability for vicarious trademark infringement. *See Dish Network L.L.C. v. Siddiqi*, No. 18-CV-4397 (VB), 2019 U.S. Dist. LEXIS 193095, at 15 (S.D.N.Y. Nov. 6, 2019) (quoting *TRB Acquisitions LLC v. Seduka, LLC*, No. 15-CV-3666 (KMK), 2016 U.S. Dist. LEXIS 64846, at 3 (S.D.N.Y. May 20, 2016)). Rather, this secondary theory of liability "requires a finding that the defendant and the infringer have an apparent or actual partnership, have authority to bind one another in transactions with third parties or exercise joint ownership or control over the infringing product." See *Dish Network L.L.C. v. Siddiqi*, No. 18-CV-4397 (VB), 2019 U.S. Dist. LEXIS 193095, at 15 (S.D.N.Y. Nov. 6, 2019) (quoting *Kelly-Brown v. Winfrey*, 717 F.3d 295, 314 (2d Cir. 2013)).

Here, Plaintiff alleges no facts suggesting that Ibspot shared ownership, control, or any partnership with the alleged infringers. The Complaint merely asserts that Ibspot "enabled" or "allowed" the sale of a counterfeit product on its platform, but it contains no factual allegations showing that Ibspot and the alleged seller operated under a joint enterprise or possessed authority

to bind one another in transactions. To the contrary, the only alleged sale was initiated by Plaintiff's own counsel and promptly removed thereafter, which is inconsistent with any claim of shared control or mutual authority. See Exhibit 1 and 7. Mere facilitation or knowledge of a single transaction is insufficient to create vicarious liability under *TRB* Acquisitions and *Kelly-Brown*.

Because Plaintiff fails to allege any apparent or actual partnership, authority to bind, or joint control between Ibspot and any alleged infringer, the vicarious trademark infringement claim rests entirely on conclusory assertions and cannot survive a motion to dismiss. Accordingly, the Fourth Cause of Action should be dismissed under Fed. R. Civ. P. 12(b)(6).

Accordingly, Plaintiff's Fourth Cause of Action for contributory and vicarious trademark infringement should be dismissed in its entirety pursuant to Fed. R. Civ. P. 12(b)(6).

## IV. PLAINTIFF HAS FAILED TO ALLEGE THE EXISTENCE OF A CIVIL CONSPIRACY OF SELLING COUNTERFEIT PRODUCTS

Plaintiff alleged that all defendants "have conspired with each other to sell identical Counterfeit Products throughout the United States via multiple e-commerce platforms". "To assert a civil conspiracy claim, the complaint must allege (1) a cognizable cause of action, (2) agreement among the conspirators, (3) an overt act in furtherance of the agreement, (4) intentional participation by the conspirators in furtherance of a plan or purpose, and (5) damages." *Kovkov v. Law Firm of Dayrel Sewell, PLLC*, 182 A.D.3d 418, 119 N.Y.S.3d 849, 849-50 (2020) (citing *Abacus Fed. Sav. Bank v. Lim*, 75 A.D.3d 472, 905 N.Y.S.2d 585, 588 (2010)); accord *ACR Sys., Inc. v. Woori Bank*, 232 F. Supp. 3d 471, 478-79 (S.D.N.Y. 2017).

For example, in *Heilbut v. Cassava Sciences., Inc*., 778 F. Supp. 3d 551, 576 (S.D.N.Y 2025), "Defendants do not dispute the last three elements of civil conspiracy but argue that

Plaintiffs have failed to demonstrate the existence of an agreement and that Plaintiffs' civil conspiracy claim is barred by the intracorporate conspiracy doctrine." The Court held that it "is not persuaded on either ground and finds that Plaintiffs have adequately pleaded the existence of a civil conspiracy." *Id*.

Here, despite that Plaintiff has failed to plead a cause of action with respect to trademark infringement for the defendants that sold counterfeit products with the "Gummibär Mark", Ibspot has never entered into agreements with any of the defendants. Decl. of Defendant ¶6.

As such, Plaintiff has failed to assert a civil conspiracy claim against Defendants because the elements of civil conspiracy are not satisfied in this case.


## V. PLAINTIFF HAS FAILED TO ALLEGE CLAIMS OF UNFAIR COMPETITION AS IT CANNOT ESTABLISH THAT DEFENDANT ACTED IN BAD FAITH

"Under New York law, an unfair competition claim encompasses a broad range of unfair practices." American Footwear Corp. v. Gen'l Footwear Co., 609 F.2d 655, 662 (2d Cir. 1979)). "[T]he essence of unfair competition under New York law is 'bad faith misappropriation of the labors and expenditures of another, likely to cause confusion or to deceive purchasers as to the origin of the goods.'" Schutte Bagclosures Inc. v. Kwik Lok Corp., 193 F. Supp. 3d 245, 286 (S.D.N.Y. 2016) (quoting Rosenfeld v. W.B. Saunders, 728 F. Supp. 236, 249- 50 (S.D.N.Y. 1990)) (internal quotation marks and other citation omitted).

For example, in case *Luv n' Care, Ltd. v. Mayborn USA, Inc*, the court holds that "The elements of trademark infringement under New York common law mirror elements of trademark infringement under the Lanham Act. However, a plaintiff asserting an unfair competition claim under New York common law must also show that the defendant acted in bad faith Luv n' Care." Ltd. v. Mayborn USA, Inc., 898 F. Supp. 2d 634, 643. "[A] plaintiff must show either actual

confusion or a likelihood of confusion, and there must be 'some showing of bad faith' on the part of the defendants." *Id.* In Case *CDC Newburgh Inc. v. STM Bags, LLC*, the court holds that the plaintiff's allegations that "Defendants have acted with fraud, malice, and willful and wanton conduct" and "willfully intentionally, maliciously, and in bad faith infringed on the . . . Trademarks" were "wholly conclusory" without showing bad faith. CDC Newburgh Inc. v. STM Bags, LLC, 692 F. Supp. 3d 205.

Here, as it is discussed above, Plaintiff does not plausibly alleged trademark infringement and copyright infringement as it can not establish that Defendant was the "origin" of the TUMPETY Doll or that Defendant derived any direct financial benefit from the alleged infringement, and Plaintiff can not establish either prong of the Second Circuit's test for trademark counterfeiting. Furthermore, Plaintiff has no legal ground at all for claiming trademark "Gummy Bear" and can not establish enforceable trademark rights in "Gummy Bear". Similar with Case *CDC Newburgh Inc.,* Plaintiff can not establish that Defendant has acted with "fraud, malice, and willful and wanton conduct" infringing its Gummibär Mark, when Defendant made no "use in commerce" of the Gummibär mark, and Defendant's TUMPETY Doll products are plainly distinct from Plaintiff's Gummibär mark.

Therefore, Plaintiff's claim is conclusory, fails to identify specifically the alleged wrongful conduct undertaken by Defendant, and is insufficient to establish a claim of unfair competition under New York law.

## VI. PLAINTIFF HAS FAILED TO ALLEGE STATUTORY DAMAGE CLAIMS UPON TRADEMARK AND COPYRIGHT INFRINGEMENT AS THE ELEMENTS OF WILLFUL CONDUCT ARE MISSING IN THIS CASE

Plaintiff alleged that "Plaintiff be awarded statutory damages of Two Million Dollars (U.S.) and No Cents ($2,000,000.00) for each and every use of the Plaintiff's mark counterfeited by

each Defendant", and "In the alternative to Plaintiff's actual damages and Defendants' profits for copyright infringement of the copyrighted Gummy Bear Song and the separately copyrighted Gummibär character pursuant to 17 U.S.C.§ 504(b), for statutory damages of up to $150,000 per infringement pursuant to 17 U.S.C. § 504(c) for willful copyright infringement, which Plaintiff may elect prior to the rendering of final judgment."

As illustrated above, "A sustainable claim must establish that the defendant made 'use in commerce' of Plaintiff's trademark to begin with." *See* 15 U.S.C. § 1114(1)(a) (restricting the "use in commerce" of "a registered mark"); *Soter Tech.*, *LLC v. IP Video Corp.*, 523 F. Supp. 3d 389, 397 (S.D.N.Y 2021). Defendant never sold products that contain or use the "Gummibär Mark" or any allegedly similar mark. Instead, Defendant sold a TUMPETY Doll product on its website, and there is no indication that the Defendant included the "Gummibär Mark" on the package of the product or the website page in the Complaint. Therefore, Plaintiff failed to allege a statutory damage claim upon trademark infringement as it lacks a foundation of facts.

Under 17 U.S. Code § 504(c)(1) "the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just. 2) In a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000. In a case where the infringer sustains the burden of proving, and the court finds, that such infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright, the court in its discretion may reduce the award of statutory damages to a sum of not less than $200."

When interpreting the clause of statutory damages under 17 U.S. Code § 504(c), "the Second Circuit…… noted several factors for courts to consider. First, the relevant factors include whatever dollar figures are available, such as "the expenses saved and the profits reaped by the infringers[,] ... the revenues lost by the plaintiff, ... [and] the value of the copyright." *Id.* at 1117. Second, "[s]ome factors do focus on an individual defendant's culpability, for instance, whether the defendant's conduct was innocent or willful, ... or whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced." *Id*. Third, "the deterrent effect on others besides the defendant ... [and] the potential for discouraging the defendant ... factor[ ] into the determination of the award" because "[a]wards of statutory damages serve two purposes—compensatory and punitive." *Id*. Accord *N.A.S. Import, Corp.*, *et al. v. Chenson Enter.*, *Inc.*, 968 F.2d 250, 252 (2d Cir. 1992). *Sara Lee Corp. v. Bags of New York*, *Inc.*, 36 F. Supp. 2d 161, 166 (S.D.N.Y. 1999). "The determination of a proper amount of statutory damages must look to the full range of factors discussed above." *Id*.

A. **Defendant has not concealed information or misled the court or Plaintiff about its sales activity and revenue**

As to the first set of factors, the court holds that "active effort to mislead the court about continued willful counterfeiting is a traditional aggravating factor in statutory damages inquiries". For example, in *Sara Lee Corp. v. Bags of New York, Inc.,* where "(Plaintiff) never received any response to discovery requests. These defendants kept little or no records as to sale and surely none which would allow a plaintiff to calculate the profits," *Sara Lee Corp. v. Bags of New York*, *Inc.*, 36 F. Supp. 2d 161, 168 (S.D.N.Y. 1999), and "the defendants refused to provide even basic information such as cost and revenue estimates," *Id*. The court held that "the defendants have failed to provide evidence that would allow a more informed damages determination", and "in determining infringement damages, courts are to resolve against the defendants any factual uncertainties, such as whether any portion of the defendants' revenue may be deducted from

damages, when the defendants left the uncertainty by not responding to the evidence of counterfeit sales with evidence of their own." *Id*.

Here, upon receipt of the notice from the Plaintiff's attorney, Defendant immediately removed the sale listing on issue. Defendant also conducted an internal investigation and provided the sales figures to the Plaintiff. There is one unit sold for the involved TUMPETY branded doll product, and the sale price is $43.8. See Exhibit 7 - Purchase order. This order was purchased by the Plaintiff's attorney Mr. Russel Bogert. *Id*.

As such,  the profit and the expense from this sale of the involved product on issue are available and explicit. Defendant has not concealed or misled the court or Plaintiff about its sales activity.

### B. Defendant has no willfulness of infringement, given consideration of the length of the sale activity and its response upon the first legal notice by the Plaintiff

The court refers to the length of the infringement operation and the response upon receipt of the legal notice, such as cease-and-desist letters. For example, in Case *Sara Lee Corp. v Bags of New York*, *Inc*., the court agrees that "the willful activity of the defendants resulted in a methodical long-time operation of a counterfeit Coach factory knowing full well ... that what was being produced was unlawful to sell." *Sara Lee Corp. v. Bags of N. Y., Inc.*, 36 F. Supp. 2d 161, 167. Additionally, the Court held that "the defendants had engaged in deliberate and willful counterfeiting, even after receiving cease and desist letters." *Gucci Am*., *Inc. v. Gold Ctr*. *Jewelry*, 997 F. Supp. 399, 401(S.D.N.Y. 1998), rev'd, 158 F. Supp. 3d 631 (2d Cir. 1998).

Here, Defendant had operated the sale of the involved TUMPETY Doll product since October 16,2024  till the receipt of the legal notice sent by the Plaintiff's attorney on or around June 24,2025. By then, Defendant had never received a cease or desist letter or such legal notice from the Plaintiff. Upon receiving the first notice, Defendant immediately removed this sale

listing and conducted an investigation. Exhibit 1 -Declaration iso Motion to Dismiss-Def Ibspot Inc.¶7. Such information was provided to the attorney for the Plaintiff by the Defendant. Therefore, Defendant has responded to the legal claim and notice promptly and in good faith.

**C. Defendant has no defiance of attempts at deterrence, and the size of the operation is minimal compared with the common standard of granting statutory damages**

The court regards "defiance of attempts at deterrence" as another factor in determining "willful" infringement. *Sara Lee Corp. v. Bags of New York, Inc.*, 36 F. Supp. 2d 161, 169 (S.D.N.Y. 1999). For example, in *Sara Lee Corp. v. Bags of New York, Inc*., where the defendants had continued the operation for over two years after law enforcement conducted search and seize and one defendant plead guilty of trademark infringement and received injunction by one default judgement, the court held that "the defendants' persistence in the face of extensive governmental efforts to end their counterfeiting business shows not only that they acted willfully, but also that they are difficult to deter." *Id*.

Here, Defendant has never received one cease and desist notice until the attorney for the Plaintiff sent such a notice on June 24,2025. Exhibit 1 -Declaration iso Motion to Dismiss-Def Ibspot Inc.¶7. Defendant immediately took down the involved listing upon receipt of the notice. *Id*. Therefore, this factor of "defiance of attempts at deterrence" is missing in this case to constitute "willful" conduct.

In addition, "size of the operation" is another factor for the court to review and determine "willful" conduct. In *Sara Lee Corp. v Bags of New York, Inc*., the court held that "Mr. Helou's operation was relatively large in scale, as his inventory of goods and equipment showed. In the showroom, the seizure disclosed an inventory of 5,512 bags worth at least $230,000 under conservative assumptions." *Sara Lee Corp. v. Bags of N. Y., Inc., 36 F. Supp. 2d 161, 169*. Once again, no such large-scale operation is found in Defendant's business. On the contrary,

Defendant has never manufactured any goods or products of the involved product in New York or the U.S. Exhibit 1 -Declaration iso Motion to Dismiss-Def Ibspot Inc.¶8. Further Defendant has zero stock of the involved TUMPETY branded doll product. *Id*.¶9. Therefore, the factor of "size of the operation" is also missing in this case.

For the reasons set forth above, Plaintiff can not establish that Defendant has "willful" conduct of such trademark or copyright infringement, as Defendant has not concealed information or misled the court or Plaintiff about its sales revenue and figures, the length of the sale activity is very short, and Defendant's immediate response in good faith upon the first legal notice. Moreover, Defendant has no defiance of attempts at deterrence, and the size of the operation is minimal compared with the common standard of granting statutory damages. Thus, Plaintiff has failed to allege statutory damage claims upon trademark and copyright infringement as the elements of "willful" infringement conduct are missing.

## CONCLUSION

For the foregoing reasons, Plaintiff has failed to state a claim upon which relief can be granted. The pleadings have impermissibly lumped defendants together, alleged no actionable use of the Gummibär Mark and failed to establish the elements of trademark infringement and trademark counterfeiting, and also failed to establish the elements of civil conspiracy. The Plaintiff has further failed to claim statutory damages absent willful infringement. Accordingly, Defendant respectfully requests that the Court dismiss the Complaint with prejudice and grant such other relief as it deems just and proper.

Dated: New York, New York                          */s/ Yenyi Anderson*
      November 11, 2025                          Yen-Yi Anderson
                                              Anderson & Associates Law, P.C
                                              61 Broadway, Suite 2809
                                              New York, NY 10006

646-452-9982
y.anderson@aalawpc.com
*Counsel for Defendants*
*Ibspot Inc.*

## CERTIFICATE OF WORD COUNT COMPLIANCE

I affirm that this Memorandum of Law in Support of Defendant's Motion to Dismiss complies with the provisions of Local Civil Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts Of New York because it contains 5,997 words, exclusive of the cover, signature block, and certification of word count.

Dated: November 11, 2025                                     */s/ Yenyi Anderson*

      New York, New York                                     Yen-Yi Anderson

**CERTIFICATE OF SERVICE**

Pursuant to Local Civil Rule 55.2(a)(3), I hereby certify that on November 11, 2025, a true and correct copy of the foregoing Motion will be served upon the Plaintiff listed in Schedule A to the Complaint on any party that has appeared via ECF or via the alternative methods of service previously authorized by this Court's Order dated October 1, 2025, including service by electronic mail to the email addresses identified for each Plaintiff, as set forth in said Order.


Dated: November 11, 2025                                         _/s/ Yenyi Anderson_

      New York, New York                                   Yen-Yi  Anderson