**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

GUMMYBEAR INTERNATIONAL, INC.,

               Plaintiff,

     v.

SOONOVA, LLC et al.,

               Defendants.

Case No.
1:25-cv-04832-JMF

*Oral Argument Requested*

**PLAINTIFF'S  MEMORANDUM OF LAW IN OPPOSITION TO**
**MOTION TO DISMISS OF DEFENDANTS IBSPOT, INC. AND EVERYMARKET, INC.**

**KAGEN, CASPERSEN & BOGART PLLC**
551 Madison Avenue, 12th Fl.
New York, NY  10022
Telephone:    (212) 880-2045
Facsimile:    (646) 304-7879
*Attorneys for Plaintiff*
*Gummybear International, Inc*

.

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT.................................................................................................. 1

FACTUAL BACKGROUND ................................................................................................... 3

   I.   GummyBear's Intellectual Property Rights............................................................ 3

   II.   EveryMarket's Infringement................................................................................... 4

   III.   IBSpot's Infringement.......................................................................................... 5

LEGAL ANALYSIS ................................................................................................................ 7

   I.   The Rule 12(b)(6) Standard ................................................................................... 7

   II.   Plaintiff Properly Pled A Claim Consistent With Fed. R. Civ. P. 8..................... 8

   III.   As Defendants Concede, Plaintiff Properly Alleged Claims for Copyright Infringement Against Them, and Defendants' Motion to Dismiss Plaintiff's Claims For Statutory Damages Under The Copyright Act Must Be Denied......................................... 9

      A.   Before Final Judgment Is Entered, Plaintiff Can Elect To Recover Actual Damages, Which Here Could Consist of Significant Licensing Fees and Investigative Costs..... 10

      B.   Although Not Necessary To Recover Statutory Damages, Plaintiff Properly Alleged That Defendants' Copyright Infringement Was Willful................................................. 12

   IV.   As Plaintiff Did Not Bring A Claim for Civil Conspiracy, Defendants' Motion To Dismiss That Claim Must Be Rejected............................................................................. 17

   V.   Plaintiff Properly Alleged Claims Against IBSpot for Trademark Counterfeiting and Trademark Infringement in Violation of the Lanham Act, 15 U.S.C. § 1114(1)(a)-(b), 1116(d), 1117(b)-(c). ............................................................................................... 17

      A.   Legal Standards........................................................................................... 18

      B.   Plaintiff Properly Alleged Claims for Counterfeiting and Trademark Infringement Against IBSpot....................................................................................................... 19

   VI.   Plaintiff Properly Alleged Claims Against IBSpot for Unfair Competition and Trade Dress Infringement Under §1125(a) ................................................................... 21

      A.   Legal Standard ............................................................................................. 23

      B.   Trade Dress Validity.................................................................................... 23

      C.   Consumer Confusion. .................................................................................. 25

   VII.   *Dastar* Does Not Require Dismissal of Plaintiff's Trademark Claims........................ 26

   VIII.   IBSpot Is Liable As A Direct Infringer. ....................................................... 27

IX.     Plaintiff Properly Alleged Against EveryMarket Claims of Trade Dress Infringement & Unfair Competition Claims In Violation Of The Lanham Act, 15 U.S.C. § 1125(a).... 29

X.      Plaintiff Properly Asserted a Claim for Unfair Competition. ....................................... 30

CONCLUSION.................................................................................................................... 31

# TABLE OF AUTHORITIES

**Cases**                                                                                   **Page(s)**

*1-800 Contacts, Inc. v WhenU.com, Inc.*,
   414 F.3d 400 (2d Cir. 2005) .................................................................................... 18
*Adecco USA, INC. v. Staffworks, Inc.*,
   2021 U.S. Dist. LEXIS 117445 (N.D.N.Y. June 23, 2021) .................................. 20
*Advance Loc. Media LLC v. Cohere Inc.*,
   2025 U.S. Dist. LEXIS 223808 (S.D.N.Y. Nov. 13, 2025) .................................. 27
*American Clothing Express, Inc. v. Cloudflare, Inc.*,
   2025 U.S. Dist. LEXIS 126158 (W.D. Tenn. July 2, 2025) .................................. 11
*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................... 8
*Axis Imex, Inc. v. Sunset Bay Rattan, Inc.*,
   2009 U.S. Dist. LEXIS 2667 (N.D. Cal. Jan. 7, 2009) ........................................ 24
*Bach v. Forever Living Prods. U.S., Inc.*,
   473 F. Supp. 2d 1110 (W.D. Wash. 2007) ........................................................... 26
*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................... 8
*Bertram Music Co., v. Yeager Holdings of California, Inc.*,
   2008 U.S. Dist. LEXIS 36990 (E.D. Cal. May 6, 2008) ...................................... 12
*Brittney Gobble Photography, LLC v. Wenn Ltd.*,
   2019 U.S. Dist. LEXIS 39414 (E.D. Tenn. Feb. 19, 2019) .................................. 11
*Bryant v. Media Right Prods., Inc.*,
   603 F.3d 135 (2d Cir. 2010) ................................................................................. 13
*Burch v. Pioneer Credit Recovery, Inc.*,
   551 F.3d 122 (2d Cir. 2008) ................................................................................... 8
*BWP Media USA, Inc. v. Polyvore, Inc.*,
   922 F.3d 42 (2d Cir. 2019) ...................................................................... 13-14, 14
*Christian Louboutin S.A. v. Yves Saint Laurent Am. Holding, Inc.*,
   696 F.3d 206 (2d Cir. 2012) ................................................................................. 23
*Corson v. Brown Harris Stevens of the Hamptons, LLC*,
   2018 U.S. Dist. LEXIS 248214 (S.D.N.Y. Jan. 24, 2018) .............................. 16-17
*Cox Commc'ns, Inc. v. Sony Music Ent.*,
   No. 24-171, 145 S. Ct. 2841, 2025 WL 1787701 (U.S. June 30, 2025) ............... 28
*D.C. Comics Inc. v. Mini Gift Shop*,
   912 F.2d 29 (2d Cir. 1990) ................................................................................... 15
*Dastar Corp. v. Twentieth Century Fox*,
   539 U.S. 23 (2003) ........................................................................................... 26, 27
*Davis v. The Gap, Inc.*,
   246 F.3d 152 (2d Cir. 2001) ................................................................................. 11
*Disney Enter's v. Farmer*,
   427 F. Supp. 2d 807 (E.D. Tenn. 2006) ............................................................... 13
*Ez-XBRL Sols, Inc. v. Chapke*,
   2018 U.S. Dist. LEXIS 224803 (E.D. Va. Sept. 25, 2018) .............................. 11-12

*F.W. Woolworth Co. v. Contemporary Arts, Inc.,*
    344 U.S. 228 (1952) .................................................................................. 13

*Fendi Adele S.R.L. v. Filene's Basment, Inc.,*
    696 F. Supp. 2d 368 (S.D.N.Y. 2010) ....................................................... 21

*Fitzgerald Pub. Co., Inc. v. Baylor Pub. Co., Inc.,*
    807 F.2d 1110 (2d Cir. 1986) ..................................................................... 15

*Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.,*
    772 F.2d 505 (9th Cir. 1985) ...................................................................... 11

*Friedman v. Live Nation Merch., Inc.,*
    833 F.3d 1180 (9th Cir. 2016) .................................................................... 16

*Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.,*
    111 F.3d 993 (2d Cir. 1997) ....................................................................... 21

*General Sci. Corp. v. SheerVision, Inc.,*
    2011 U.S. Dist. LEXIS 100216 (E.D. Mich 2011) .................................... 27

*Island Software & Computer Serv., Inc. v. Microsoft Corp.,*
    413 F.3d 257 (2d Cir. 2005) ....................................................................... 16

*Joe Hand Promotions, Inc. v. Pacheco,*
    2019 U.S. Dist. LEXIS 87432 (S.D. Cal. May 23, 2019) .......................... 12

*Johnson v. Amazon, Inc.,*
    2021 U.S. Dist. LEXIS 8338 (W.D. Okl. Jan. 15, 2021) ...................... 15-16

*King Spider LLC v. 884886 CH Store,*
    2024 U.S. Dist. LEXIS 166907 (S.D.N.Y. Sept. 17, 2024) ....................... 27

*Little Mole Music v. Spike Investment, Inc.,*
    720 F.Supp. 751 (W.D. Mo.1989) .............................................................. 15

*Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc.,*
    453 F.3d 377 (6th Cir. 2006) ...................................................................... 28

*Millennium TGA, Inc. v. Leon,*
    2013 U.S. Dist. LEXIS 150508 (E.D.N.Y. Sept. 23, 2013) ................. 11, 12

*N. Atl. Operating Co. v. Scott,*
    2018 U.S. Dist. LEXIS 167515 (E.D. Mich. Sept. 28, 2018) .................... 12

*Nat'l Bd. of Med. Examiners v. Optima Univ. LLC,*
    2011 U.S. Dist. LEXIS 143645 (W.D. Tenn. Sept. 29, 2011) ................... 12

*New York City Triathlon, LLC v. NYC Triathlon Club, Inc.,*
    704 F. Supp. 2d 305 (S.D.N.Y. 2010) ....................................................... 24

*Nextgen IP Mgmt., LLC v. Cloudlfare, Inc.,*
    2025 U.S. Dist. LEXIS 220479 (S.D.N.Y. Nov. 5, 2025) ......................... 29

*NFL v. Primetime 24 Joint Venture,*
    131 F. Supp. 2d 458 (S.D.N.Y. 2001) ....................................................... 15

*Ohio State Univ. v. Redbubble, Inc.,*
    989 F.3d 435 (6th Cir. 2021) ................................................................ 27, 28

*Patane v. Clark,*
    508 F.3d 106 (2d Cir. 2007) ........................................................................ 8

*Polaroid v. Polarad Elecs. Corp.,*
    287 F.2d 492 (2d Cir. 1961) .......................................................... 21, 25, 26

*Roku, Inc. v. Individuals,*
    2025 U.S. Dist. LEXIS 61513 * 17 (S.D.N.Y. March 31, 2025) ............... 21

*Spin Master Ltd. v. Alan Yuan's Store*,
   325 F. Supp. 3d 413 (S.D.N.Y. 2018) ................................................................. 13
*Star Indus., Inc. v. Bacardi & Co.*,
   412 F.3d 373 (2d Cir. 2005) .............................................................................. 25
*Subversive Tools, Inc. v. Bootstrap Farmer LLC*,
   2025 U.S. Dist. LEXIS 230032 (S.D.N.Y. Nov. 19, 2025) ........................................ 24, 26, 30
*Traffix Devices v. Mktg. Displays*,
   532 U.S. 23 (2001) ....................................................................................... 25
*Turn on Prods. v. Almost Famous Apparel, LLC*,
   2019 U.S. Dist. LEXIS 64328 (E.D.N.Y. April 12, 2019) ....................................... 30
*Tushbaby, Inc. v. Jinjang Kangbersi Trade Co.*,
   2024 U.S. Dist. LEXIS 198535 (S.D.N.Y. October 30, 2024) ................................. 23, 24
*Two Pesos, Inc. v. Taco Cabana, Inc.*,
   505 U.S. 763 (1992) ..................................................................................... 25
*UMG Recording v. Escape Media Group*,
   2014 U.S. Dist. LEXIS 137491 (S.D.N.Y. Sept. 29, 2014) ..................................... 14
*UMG Recordings, Inc. v. MP3.com, Inc.*,
   109 F. Supp. 2d 223, 56 U.S.P.Q. 2d 1376 (S.D.N.Y. 2000) ................................... 16
*Van Praagh v. Gratton*,
   993 F. Supp. 2d 293 (E.D.N.Y. 2014) ................................................................ 18
*Wal-Mart Stores, Inc. v. Samara Bros.*,
   529 U.S. 205 (2000) ..................................................................................... 21

## Statutes

15 U.S.C. § 1114 ........................................................................................ 2, 7, 17, 18
15 U.S.C. § 1115 ........................................................................................ 25
15 U.S.C. § 1116 ........................................................................................ 18
15 U.S.C. § 1125 ........................................................................................ 2, 21, 29
15 U.S.C. § 1127 ........................................................................................ 18, 20
17 U.S.C. § 504 ......................................................................................... 10, 11, 12, 15
Lanham Act Section 32 ................................................................................. 7
Lanham Act Section 43 ................................................................................. 7, 21, 23

## Rules

Fed. R. Civ. P. 8 ........................................................................................ 2, 8
Fed. R. Civ. P. 12 ....................................................................................... 7, 8, 16

Plaintiff Gummybear International Incorporated ("GBI" or "Plaintiff") submits this memorandum in opposition to the motions to dismiss the Complaint for failing to state a claim for relief filed by Defendants IBSpot, Inc. ("IBSpot") and EveryMarket, Inc. ("EveryMarket," with IBSpot, "Defendants").

## PRELIMINARY STATEMENT

GBI is a content production company that created Gummibär, a singing and dancing animated gummy bear character. In 2006, the song "*I am a Gummy Bear (The Gummy Bear Song)*," and then a music video of the same name, became viral internet sensations first in Europe and then throughout the United States and the world. The video for the *Gummy Bear Song* and its Spanish version have 3.2 billion and 1.2 billion views on YouTube respectively. GBI also produces an animated web series titled *Gummibär and Friends* which is available on the official Gummibär YouTube channel along with other videos and content. In May 2021, GBI's content on YouTube surpassed 20 billion content views. In addition to producing video and music content, GBI manufactures and sells Gummibär merchandise, including but not limited to plush Gummibär toys.

Defendants are extremely sophisticated operators of websites that sold green plush anthropomorphic gummy bear dolls that sing the *Gummy Bear Song*. Defendants identify themselves as the Sellers of these dolls on their websites. Defendants procured the dolls from listings posted by suppliers on Amazon without ever conducting the slightest inquiry into the copyright and trademark ownership for these products.

Defendants' motions to dismiss the Second Amended Complaint ("SAC") must be denied for the reasons more fully expressed below.

***First***, the SAC satisfies the requirement of Fed. R. Civ. P. 8(b) by specifying the allegations against Defendants through the provisions of detailed factual allegations, screenshots of the

1

specific infringement and merchant storefronts, and detailed schedules identifying information about the infringement and infringers.

**Second**, Plaintiff asserts valid copyright infringement claims against both Defendants for their unauthorized uses of the *Gummy Bear Song* and against IBSpot for infringing the copyrighted Gummibär character. Defendants do not dispute Plaintiff's copyright ownership or their infringement. Instead, as debunked below, Defendants raise meritless claims that Plaintiff cannot demonstrate damages against them or that Defendants were not direct infringers.

**Third**, Plaintiff asserts valid claims under the Lanham Act against IBSpot for Trademark Infringement and Trademark Counterfeiting (15 U.S.C. §§ 1114(1)(a)-(b), 1116(d) and 1117(b)-(c)) and for unfair competition and trade dress/product design infringement under 15 U.S.C. §1125(a). IBSpot sold the "Standard Counterfeit Doll," which was a literal replica of Gummibär as featured in GBI's trademark registration and of GBI's own plush dolls.

**Fourth**, Plaintiff asserts a valid claim against EveryMarket under §1125(a) for unfair competition and trade dress/product design infringement. Without authorization, EveryMarket sold a green anthropomorphic gummy bear doll that sang the *Gummy Bear Song*. EveryMarket cannot escape liability because it sold a watered-down version of the Gummibär doll that clearly was intended to serve as a substitute for Plaintiff's authentic products.

## FACTUAL BACKGROUND

### I.    GummyBear's Intellectual Property Rights

GBI, a content production company, created Gummibär (JK¶5).[1]  In 2006, the *Gummy Bear Song* became a viral hit first in Europe and then throughout the US (JK¶7).  GBI spent considerable

---

[1] "SAC" followed by "¶" refers to paragraphs of Plaintiff's Second AmendedComplaint. "JK" followed by "¶" refers to paragraphs of the Declaration provided by GBI's CEO, Jurgen Korduletsch in support of Plaintiff's application for a temporary restraining order which was filed simultaneous with the complaint.

resources developing the Gummibär character to feature in a music video for the *Gummy Bear Song* (JK¶16).  As created by GBI, Gummibär is a green anthropomorphic gummy bear, wearing yellow shorts with white stripes in the same configuration, with white shoes with two lines on top constituting laces and yellow patches on the side of the shoes, with a partially eaten left ear, a circular black nose, an open mouth with a small red tongue on the bottom left corner of the mouth next to a single tooth on the bottom of the mouth and to the left of the tongue (JK¶29).

Subsequently, GBI featured Gummibär in more than 500 music videos, which have been watched billions of times (JK¶¶7-10, 19).  In 2012, GBI released a Gummibär Christmas long-form video titled "*The Yummy Gummy Search for Christmas*" ("Christmas Film") (JK ¶18).  GBI produces an animated web series titled *Gummibär and Friends* which is available on the official Gummibär YouTube channel (JK ¶21).  GBI is currently developing an animated full-length feature film based on Gummibär (JK ¶24).

GBI maintains the website https://www.gummybearshop.com/ ("Gummy Bear Shop") at which consumers can purchase authentic Gummibär merchandise, including plush dolls (JK ¶32).  For approximately a dozen years, GBI sold a different version of the 12" plush toy that played the *Gummy Bear Song* if the doll's midsection was pushed (JK¶36).  GBI also sold another version of the same doll that played the *Gummy Bear Song* if one of the doll's feet was squeezed, and the doll parroted certain statements spoken to it if the other foot was squeezed (*Id.*).  In conjunction with the upcoming domestic theatrical release, GBI has entered a new merchandising deal with new singing *Gummibär* plush toys scheduled to hit the market in the forthcoming months (JK ¶37).

As set forth in Exhibit 1 to the Complaint, GBI has obtained Copyright Registrations for the sound and recording music rights for the *Gummy Bear Song* and the motion picture rights for the Christmas DVD.  As set forth in Exhibit 2, GBI also owns the United States Registration for

the Gummibär Mark (Trademark Registration Number 4335076), which covers numerous uses including but not limited to toys and playthings.

## II.    EveryMarket's Infringement

EveryMarket operates the e-commerce platform EveryMarket.com (SAC ¶17). EveryMarket is "a very sophisticated Defendant as evidenced by its overall total sales of approximately $100 million." (*Id.*)

EveryMarket offered for sale a green plush doll that sings the copyrighted "*Gummy Bear Song*" when a button labeled "Try Me" is pushed in the doll's midsection ("Verceco Doll") (SAC ¶90). However, the "Verceco Doll lacks significant aspects of *Gummibär's* appearance such as the partially eaten ear, the yellow shorts, the open mouth with one tooth, the pudgy shape of its torso and the detail on its sneakers. These were all important choices made by GBI when designing Gummibär and developing the character in music videos and in television shows for children. By doing so, Verceco dilutes and tarnishes the originality, creativity and distinctiveness of the Gummibär character" (SAC ¶98). This was obviously done for economic reasons – *i.e.*, as a cheaper way to generically rip off Gummibär.

The Standard Counterfeit Doll and the Verceco Doll both play the same approximately thirty-seven (37)-second-long bootleg of the *Gummy Bear Song* if a "Try Me" button on the doll's midsection is pressed. EveryMarket displays a video of the Verceco Doll singing the copyrighted *Gummy Bear Song* on its e-commerce platform (SAC ¶86).

EveryMarket's product description confirms its knowledge that it was exploiting Plaintiff's copyrighted song and the copyright and trademark protected *Gummibär* character. EveryMarket's admission that the doll sings "the song I am a gummy bear" shows its conscious infringement of that copyrighted song (SAC ¶96). EveryMarket's admission that the product makes a great gift

for kids "who love this bear cartoon" evidences its intent to pass off the Verceco doll as a substitute for Plaintiff's merchandise (*Id.*).

At the sales listing, EveryMarket represents that ***it is the Seller*** of the Infringing Product "Sold by: EveryMarket." (SAC ¶90). Without communicating with the Verceco Store – the manufacturer of the Verceco Doll – EveryMarket ***unilaterally*** offered for sale the Verceco Doll (SAC ¶92). EveryMarket "unilaterally downloaded images and video(s) of the Verceco Doll from the Verceco Store's e-commerce storefront on Amazon, without engaging in any diligence or investigation whatsoever as to whether the Verceco Doll infringed Plaintiff's copyrighted song" (SAC ¶94).

EveryMarket offered the Verceco Doll for sale at $41.40, or more than twice the $18.99 price at which Verceco offered the doll to consumers on Amazon (SAC ¶¶90-91). In sum, EveryMarket *itself* determined to "arbitrage" the Verceco Doll – *i.e.*, advertise it for sale on EveryMarket.com at twice the price it was sold on the Verceco Store, without ever communicating with the manufacturer or the Verceco Store, and only procuring the Verceco Doll from the Verceco Store upon receiving an order for it on its own e-commerce platform ( SAC ¶93).

### III.    IBSpot's Infringement

IBSpot "operates the e-commerce platform IBSpot.Com." (SAC ¶18). IBSpot is "an extremely sophisticated merchant that according to records obtained from payment processors has collected hundreds of millions of dollars in sales." (SAC, ¶18).

IBSpot offered for sale the Standard Counterfeit Doll (Complaint Ex. 50). This Standard Counterfeit Doll is identical to: i) *Gummibär* as depicted in Plaintiff's Trademark; ii) *Gummibär* as depicted in the copyrighted DVD; and iii) consequently, to Plaintiff's authentic plush dolls and

merchandise.   IBSpot's sales listings for the Counterfeit Doll display multiple images of *Gummibär* which are identical to the character as it appears in the DVD and Trademark as well.

IBSpot unequivocally identifies itself as the seller of the Counterfeit Doll by representing that it is "Sold by IBSpot, Fulfilled by IBSpot"



*See* RB1 & SAC ¶18.

IBSpot offered the Counterfeit Doll for sale on three different links (SAC ¶18).  The main selling point for the doll is its playing of the *Gummy Bear Song*.  In fact, one of the links is titled "Singing I Am A Gummy Bear Musical Gummibär."  (Complaint, Exhibit 50).

According to the Declaration submitted by Danielle White, IBSpot's CEO, IBSpot obtained the Counterfeit Doll from Defendant Number (18), the Tumpety Store on Amazon ("Tumpety") (DE 85-2).[2]  Tumpety sold the Counterfeit product for $18.99 (Compl., Exhibit 20). IBSpot advertised the Counterfeit Doll for sale at more than twice that price or from $40 to $43 per doll (DE 3-62).

IBSpot, like EveryMarket, is in the business of arbitraging Counterfeit Products for sale at higher prices based upon its greater market share and public veneer of legitimacy.  Thus, IBSpot scouted out the infringing product on Amazon, and offered it for sale under its name, without ever

---

[2] The Seller of the Tumpety Doll on Amazon appears to be Defendant Number (66), FANRK.

engaging in any diligence into the copyright and trademark ownership. This relationship is confirmed by the declaration submitted by IBSpot's CEO, Danielle White, which admits that IBSpot acquired the Counterfeit Product from Tumpety upon receiving an order and that IBSpot did not share any profits with Tumpety (DE 85-2).

The SAC identifies EveryMarket as a "Verceco Seller" (SAC ¶92). Plaintiff brought claims against the Verceco Sellers for: i) Count III – Violations of Section 43(A) of the Lanham Act; ii) Count IV – Contributory and Vicarious Trademark Infringement; iii) Count V - Copyright Infringement; iv) Count VI – Contributory Copyright Infringement; v) Count VII – Unfair Competition under New York law. The SAC does not allege claims against EveryMarket for Trademark Counterfeiting under 15 U.S.C. §§1114-1117 or for Trademark Infringement in Violation of §32(a) of the Lanham Act. Further, Plaintiff's Copyright Infringement Claim alleges copyright infringement against the Verceco Defendants only for the infringement of the *Gummy Bear Song* (SAC ¶¶ 163-164).

## **LEGAL ANALYSIS**

### I.    **The Rule 12(b)(6) Standard**

Pursuant to Fed. R. Civ. P. 8, a complaint must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating a motion to dismiss pursuant to Rule 12(b)(6), a court must accept all facts set forth in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See, e.g., Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008). A claim will survive a Rule 12(b)(6) motion if the plaintiff alleges facts sufficient "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim is facially plausible "when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). A plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully," *id*., and cannot rely on mere "labels and conclusions" to support a claim, *Twombly*, 550 U.S. at 555.

"Asking for plausible grounds does not impose a probability requirement at the pleading stage; it simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to prove the claim. *Twombly*, 550 U.S. at 545. Under this standard, "[o]nly a statement of facts so conclusory that it fails to give notice of the basic events and circumstances on which a plaintiff relies should be rejected as legally insufficient under [Rule] 12(b)(6)." *Patane v. Clark*, 508 F.3d 106, 116 (2d Cir. 2007).

## II.    Plaintiff Properly Pled A Claim Consistent With Fed. R. Civ. P. 8.

Both EveryMarket and IBSpot seek dismissal on the grounds that the SAC fails to satisfy Rule 8's requirement that the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  In support, both Defendants make the false claim that the SAC fails to provide "any ability to discern or distinguish which factual claims apply to which of the 67 different defendants in this case."

Defendants' throwaway argument turns a blind eye to the SAC's well-pled allegations.  For example, Plaintiff provided in Docket Entry 7 "screenshots of Defendant's e-commerce storefront, Defendants' offering for sale of the Counterfeit Products as displayed on the Defendant's ecommerce storefront, the sales cart information showing the Defendant's acceptance of payment in U.S. dollars and the Defendant's ability to ship products to the United States and New York, and additional information regarding the Defendant's storefront available on the e-commerce platform which shows the Defendant's sales efforts focused upon the United States."  Additionally, Plaintiff

annexed three Schedules to the Complaint which detailed for each Defendant critical information such as: the Defendant Number, the business alias or online store names used, the relevant e-commerce platform, whether the Defendant is categorized as a retail Seller or a Manufacturer/Wholesaler on the other hand, all email addresses and business addresses (as determined by counsel licensed in China), and the specific URLs on which the infringement appeared. *See* SAC ¶¶26-28.

In particular, EveryMarket disregards the extensive factual allegations specifying its involvement in the infringement (SAC ¶17, 79-98). The SAC, ¶18, also details how IBSpot advertised the Counterfeit Doll. Plaintiff's legal causes of action clearly differentiate the allegations asserted against the Verceco Sellers (such as EveryMarket) and the allegations made against the Counterfeit Sellers (such as IBSpot).

### III.    As Defendants Concede, Plaintiff Properly Alleged Claims for Copyright Infringement Against Them, and Defendants' Motion to Dismiss Plaintiff's Claims For Statutory Damages Under The Copyright Act Must Be Denied.

The SAC asserts that Plaintiff owns the copyright to both the *Gummy Bear Song* and to the *Gummibär* character as depicted in the copyrighted DVD. Additionally, the SAC alleges that EveryMarket infringed Plaintiff's exclusive right under the Copyright Act to perform and reproduce the *Gummy Bear Song* by displaying a link to a video of the Verceco Doll singing the song on its website and by selling a doll that sang the song. The SAC alleges that IBSpot infringed Plaintiff's copyrights to the *Gummy Bear Song* and to the *Gummibär* character. Defendants' motion does not dispute their liability for copyright infringement in any of the above respects.

Instead, Defendants claim that Plaintiff cannot obtain statutory damages against it because "the elements of willful conduct are missing in this case." Defendants' arguments are highly flawed in multiple respects. Defendants ignore that Plaintiff can elect to pursue actual damages in

lieu of statutory damages which could be calculated based upon a reasonable license fee for the use of the copyrighted works. Additionally, Defendants misconstrue the requirements for awarding statutory damages under the Copyright Act, including an award of enhanced statutory damages for willful infringement.

### A. Before Final Judgment Is Entered, Plaintiff Can Elect To Recover Actual Damages, Which Here Could Consist of Significant Licensing Fees and Investigative Costs.

The SAC asserts as an element of its actual damages under the Copyright Act, 17 U.S.C. §504(b), the "reasonable license fee on which a willing buyer and a willing seller would have agreed for the use taken by the infringer" (SAC ¶170). Hence, Defendants' thesis that Plaintiff's copyright claim must be dismissed because it supposedly cannot prove lost profits or statutory damages is erroneous.

17 U.S.C. §504(a) provides that a copyright infringer is liable for either: "(1) the copyright owner's actual damages and any additional profits of the infringer, as provided by subsection (b); or (2) statutory damages, as provided by subsection (c)." Pursuant to §504(c)(1), the copyright owner must make an election "at any time before final judgment is rendered" between "actual damages and profits" or an "award of statutory damages."

"'Actual damages' are the extent to which the market value of a copyrighted work has been injured or destroyed by an infringement." *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 512 (9th Cir. 1985). However, § 504(b) does not "elaborate on how damages are to be calculated." *Brittney Gobble Photography, LLC v. Wenn Ltd.*, 2019 U.S. Dist. LEXIS 39414, at *18 (E.D. Tenn. Feb. 19, 2019). Although actual damages can be determined by computing "lost profits," actual damages also include "the reasonable license fee on which a willing buyer and a willing seller would have agreed for the use taken by the infringer." *Davis v. The Gap, Inc.*, 246

F.3d 152, 167 (2d Cir. 2001) (although "the amount of damages may not be based on 'undue speculation,'" the fact that "finding the fair market value of a reasonable license fee may involve some uncertainty . . . is not sufficient reason to refuse to consider this as an eligible measure of actual damages"); *see also American Clothing Express, Inc. v. Cloudflare, Inc.*, 2025 U.S. Dist. LEXIS 126158 (W.D. Tenn. July 2, 2025) (awarding $10.7 million judgment based upon the licensing value of photographs of models wearing prom and wedding dresses).

Additionally, most courts allow copyright plaintiffs to recover as an element of "actual damages" their pre-suit investigative costs of the infringement and payments for online monitoring of the infringement. *See, e.g.*, *Millennium TGA, Inc. v. Leon*, 2013 U.S. Dist. LEXIS 150508, at *43 (E.D.N.Y. Sept. 23, 2013) ("Therefore, the work of PSH was critical not only in identifying the various sites used to distribute the infringing materials as well as the infringing items which had to be removed from the Internet, but also to providing corroboration for the determination of plaintiff's actual damages"); *Ez-XBRL Sols, Inc. v. Chapke*, 2018 U.S. Dist. LEXIS 224803, at *33 (E.D. Va. Sept. 25, 2018) ("the unique facts and circumstances of this case warrant an award of $106,297 in pre-suit investigative costs"); *Bertram Music Co., v. Yeager Holdings of California, Inc.*, 2008 U.S. Dist. LEXIS 36990, at *2 (E.D. Cal. May 6, 2008) (recognizing that plaintiffs' pre-suit investigation costs are recoverable only as part of actual damages instead of as part of statutory damages); *Joe Hand Promotions, Inc. v. Pacheco*, 2019 U.S. Dist. LEXIS 87432, at *15 (S.D. Cal. May 23, 2019); *c.f.*, *N. Atl. Operating Co. v. Scott*, 2018 U.S. Dist. LEXIS 167515, at *24 (E.D. Mich. Sept. 28, 2018) (upholding an award of investigative costs paid to a consultant for monitoring infringement online under the Lanham Act). Such investigative costs are properly considered "as part of the actual damages suffered by the plaintiff" where they were "a necessary

cost incurred by plaintiff as a consequence of defendant's willful infringement."  *Leon*, 2013 U.S. Dist. LEXIS 150508.

### B.  Although Not Necessary To Recover Statutory Damages, Plaintiff Properly Alleged That Defendants' Copyright Infringement Was Willful.

Section 504(c)(1) provides that a copyright owner may elect to recover "statutory damages for all infringements involved in the action, with respect to any one work . . . in a sum of not less than $750 or more than $30,000 as the court considers just."  However, under Section 504(c)(2), where the infringement is willful, "the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000" per work infringed.   17 U.S.C. § 504(c)(2). Statutory damages "must be awarded for each infringement."  *Nat'l Bd. of Med. Examiners v. Optima Univ. LLC*, 2011 U.S. Dist. LEXIS 143645, at *27-28 (W.D. Tenn. Sept. 29, 2011).

The following factors are used to set the amount of statutory damages: "(1) the infringer's state of mind; (2) the expenses saved, and profits earned, by the infringer; (3) the revenue lost by the copyright holder; (4) the deterrent effect on the infringer and third parties; (5) the infringer's cooperation in providing evidence concerning the value of the infringing material; and (6) the conduct and attitude of the parties." *Bryant v. Media Right Prods., Inc.*, 603 F.3d 135, 144 (2d Cir. 2010).  The Court "has wide discretion to determine the amount of statutory damages."  *Disney Enter's v. Farmer*, 427 F. Supp. 2d 807, 816 (E.D. Tenn. 2006).

It has long been established that for statutory damages to be "an effective sanction for enforcement of copyright policy," they must be awarded "not merely to compel[] restitution of profit and reparation for injury[,] but also [be] designed to discourage wrongful conduct." *F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 233 (1952).

### 1.    Defendants Were Acting As Direct Infringers

Although Defendants purport to operate online marketplaces, Defendants were not acting as passive intermediaries facilitating sales between third parties and consumers.  To the contrary, Defendants scouted out the infringing products on other stores and determined under their own initiative to advertise those same products for sale at twice the price.  Defendants explicitly identified themselves – and not a third party – as the seller of the infringing products on their respective web pages.  Defendants solely determined the price at which the infringing products would be sold.  Defendants procured and uploaded the infringing videos and images to their webpages – not a third-party merchant.  Defendants also kept for themselves all proceeds earned from the sale of the products.

Thus, as explained below, Defendants were acting as direct infringers with respect to the infringing images and videos that Defendants themselves posted on the product listings appearing on their websites.  This distinction is critical because for direct infringers, such as Defendants, "copyright infringement is a strict liability offense, meaning intent or knowledge is not an element of infringement." *Spin Master Ltd. v. Alan Yuan's Store*, 325 F. Supp. 3d 413, 422 (S.D.N.Y. 2018); *BWP Media USA, Inc. v. Polyvore, Inc.*, 922 F.3d 42, 47 (2d Cir. 2019) (the "Copyright Act is a strict liability regime" which means that infringers are liable for damages "regardless as to whether they had knowledge that the content was infringing")

In the internet context, to avoid website operators becoming strictly liable for infringing content posted by third parties, courts imposed a requirement that the website operator or internet service provider "must have taken some affirmative, volitional step to infringe." *BWP Media*, 922 F.3d at 47.  Where a defendant uploads infringing material to its own website, the volitional conduct requirement is satisfied. *UMG Recording v. Escape Media Group*, 2014 U.S. Dist. LEXIS

137491, at *60 (S.D.N.Y. Sept. 29, 2014) (employees uploading the infringing works showed "volitional conduct" that caused the illicit reproduction or distribution of the copyrighted works).

Here, the SAC pleads that EveryMarket, without communication with the Verceco Store, procured the video of the Verceco Doll singing the copyrighted *Gummy Bear Song*, and then posted that infringing video to its website.  Likewise, IBSpot posted itself the images of the Gummibär "cartoon" character to its own website which violated Plaintiff's copyright in the character.  With respect to the sale of the dolls, both IBSpot and EveryMarket procured the infringing dolls from a foreign company that acted as the supplier of the doll while Defendants represented themselves to the consumer on their websites as the "Seller" themselves of the infringing product.[3]

Here, at the 12(b)(6) stage, there are, at a minimum, sufficient allegations that Defendants are direct infringers due to their unilateral arrangement for the sale of the products on their websites with the Defendants listed as the Sellers of the products.

## 2.    Defendants Are Not Innocent Infringers

§504(c)(2) provides that "in a case where the infringer sustains the burden of proving, and the court finds, that such infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright, the court in its discretion may reduce the award of statutory damages to a sum of not less than $200."  "The burden is on the defendants to establish that any infringement was innocent. . . . It is not sufficient for a defendant merely to claim such innocence." *D.C. Comics Inc. v. Mini Gift Shop*, 912 F.2d 29, 35 (2d Cir. 1990).  Innocence is only relevant to the court's fixing of statutory damages.  *See Fitzgerald Pub. Co., Inc. v. Baylor Pub. Co., Inc.*, 807 F.2d 1110, 1113 (2d Cir. 1986).

---

[3] For a greater discussion of when an online storefront acts as the Seller of an infringing product or a neutral e-commerce platform, please see Plaintiff's discussion below of cases discussing this distinction under the Lanham Act.

Contrary to Defendants' analysis, "Innocent intent, however, is more than just the absence of willfullness." *NFL v. Primetime 24 Joint Venture*, 131 F. Supp. 2d 458, 476 (S.D.N.Y. 2001). Rather, "it is possible in the same action for a plaintiff not to be able to prove a defendant's willfullness, and, at the same time, for the defendant to be unable to show that it acted innocently." *Fitzgerald Publ'g Co. v. Baylor Publ'g Co.*, 807 F.2d 1110, 1115 (2d Cir. 1986).

Defendants are unable at the pleading stage to sustain their "heavy" burden of proving their "innocent infringement" as this defense often is limited to cases involving "unsophisticated" defendants. *NFL v. Primetime 24 Joint Venture*, 131 F. Supp. 2d 458, 476; *Little Mole Music v. Spike Investment, Inc.*, 720 F.Supp. 751, 755 (W.D. Mo.1989) ("experienced operators[] in the ... business" were not innocent infringers). To the contrary, IBSpot and EveryMarket are extremely sophisticated parties that generate hundreds of millions of dollars in e-commerce sales.

### 3.    The SAC Contains Sufficient Allegations That Defendants Acted Willfully.

Whether Defendants' infringement was "willful" is relevant to Plaintiff's ability to seek enhanced statutory damages of up to $150,000 per work infringed under §504(c)(2). At the pleading stage, allegations that the defendant knowingly and willfully infringed the copyrighted material and profited therefrom have been held sufficient to plead this element of damages. *See Johnson v. Amazon, Inc.*, 2021 U.S. Dist. LEXIS 8338, at *7 (W.D. Okl. Jan. 15, 2021) (finding that the complaint contained sufficient factual content to plausibly allege that the use was willful). Questions of a Defendant's willfulness, or its state of mind, present "factual issues inappropriate for resolution by summary judgment," much less on a Rule 12(b)(6) motion. *Friedman v. Live Nation Merch., Inc.*, 833 F.3d 1180, 1186 (9th Cir. 2016) (defendant was not able to cite *any* "cases in which a court has granted summary judgment in favor of a defendant on the issue of willfulness").

Willfulness can be shown by evidence that "defendant's actions were the result of 'reckless disregard' for, or 'willful blindness' to, the copyright holder's rights." *Island Software & Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 262 (2d Cir. 2005).  It is "highly relevant" to this analysis that Defendants are sophisticated e-commerce enterprises that have generated hundreds of millions of dollars in e-commerce sales.  *UMG Recordings, Inc. v. MP3.com, Inc*., 109 F. Supp. 2d 223, 56 U.S.P.Q. 2d 1376, 1380 (S.D.N.Y. 2000) ("defendant's size and financial assets ... highly relevant" to a large statutory damage award).

Given Gummibär's immense popularity, a quick internet search would have revealed Plaintiff's ownership of the copyrights to the song and character (DE 3-4, ¶¶ 53-54; SAC ¶¶ 61-67).  Thus, the sophisticated and well-heeled Defendants' lack of copyright and trademark clearance procedures – despite their knowledge of the prevalence of counterfeit suppliers on Amazon and other e-commerce platforms – amounts to a reckless or willful disregard of Plaintiff's intellectual property rights.  *Live Nation*, 833 F.3d at 1186 (holding that where defendant's approval procedures for the use of photographs "never explicitly asks about copyrights" that defendant was not entitled to summary judgment on the question of willfulness); *Corson v. Brown Harris Stevens of the Hamptons, LLC*, 2018 U.S. Dist. LEXIS 248214, at *9 (S.D.N.Y. Jan. 24, 2018) ("It's clear that defendant, as a sophisticated business, knew there was a copyright involved and did nothing to check those rights or to clear permission to reprint from the photographer").

## IV.    As Plaintiff Did Not Bring A Claim for Civil Conspiracy, Defendants' Motion To Dismiss That Claim Must Be Rejected.

Defendants seek to dismiss Plaintiff's alleged claim of a civil conspiracy to sell infringing or counterfeit products.  In support of their motions, Defendants rely on their self-serving declarations pointing to their unilateral responsibility for the infringement which defeats any claim of a conspiracy.

However, the question is moot as Plaintiff does not plead a claim for civil conspiracy. Instead, Plaintiff alleged that one basis for asserting personal jurisdiction over foreign defendants is under a theory that the foreign defendants conspired with parties subjected to the Court's jurisdiction. The SAC clearly alleges that IBSpot and EveryMarket are domestic corporations headquartered in the United States.  Thus, the issue of conspiracy personal jurisdiction is not relevant to these Defendants.

**V.      Plaintiff Properly Alleged Claims Against IBSpot for Trademark Counterfeiting and Trademark Infringement in Violation of the Lanham Act, 15 U.S.C. § 1114(1)(a)-(b), 1116(d), 1117(b)-(c).**

Plaintiff alleges that IBSpot engaged in trademark infringement and counterfeiting through its advertisement of images of the Standard Counterfeit Doll on its website which are nearly identical to the drawing of Gummibär as it appears in Plaintiff's valid trademark registration. Consequently, IBSpot advertised plush dolls that were nearly identical to Plaintiff's plush dolls as both products were replicas of the Gummibär depicted in the trademark registration (SAC ¶71-72).  The customer confusion caused by the sale of the Standard Counterfeit Dolls has been so significant that it has interfered with "GBI's efforts to arrange for legitimate distribution of its products through retail stores" (DE 3-4, ¶50).

**A.  Legal Standards**

The Lanham Act prohibits the use in commerce, without consent, any reproduction, counterfeit, copy or colorable imitation of any "registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods," in a way that is likely to cause confusion. 15 U.S.C. § 1114(1)(a).

Under §1116(d)(1)(B)(i), a "counterfeit mark" means "a counterfeit of a mark that is registered on the principal register in the United States Patent and Trademark Office for such goods or services sold, offered for sale, or distributed and that is in use, whether or not the person against

17

whom relief is sought knew such mark was so registered." A "counterfeit" is "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127.  §1117 (c) and (d) provide for treble damages or statutory damages for the use of counterfeit marks.

To prevail on a trademark-infringement claim under 15 U.S.C. § 1114, a plaintiff must first "establish that (1) it has a valid mark that is entitled to protection under the Lanham Act; and that (2) the defendant used the mark, (3) in commerce, (4) in connection with the sale . . . or advertising of goods or services, (5) without the plaintiff's consent." *1-800 Contacts, Inc. v WhenU.com, Inc.*, 414 F.3d 400, 406-07 (2d Cir. 2005) (internal quotations omitted). Second, Plaintiff must show "that defendant's use of that mark is likely to cause confusion . . . as to the affiliation, connection, or association of [defendant] with [plaintiff], or as to the origin, sponsorship, or approval of [the defendant's] goods, services, or commercial activities by [plaintiff]." *Id*. at 407 (internal quotation marks omitted).  The "[l]ikelihood of confusion is a fact-intensive analysis that ordinarily does not lend itself to a motion to dismiss."  *Van Praagh v. Gratton*, 993 F. Supp. 2d 293, 303 (E.D.N.Y. 2014).

## B.  Plaintiff Properly Alleged Claims for Counterfeiting and Trademark Infringement Against IBSpot.

Here, IBSpot concedes that Plaintiff owns the Gummibär Mark (Trademark Registration Number 4335076) (DE 85-1, p. 14) ("Plaintiff owns one registered mark").  The distinctive Gummibär Mark consists of an anthropomorphic, pudgy gummy bear, with a green torso, one chewed up ear, wearing only yellow and white shorts and white sneakers with yellow stripes as depicted below:



IBSpot had three product listings for the Standard Counterfeit Doll (Compl., Ex. 52).  The first product listing was titled "Tumpety Gummy Bear Plush Green Singing Bear Toy Christmas Celebration Props Accompanying Toys Before Going to Bed" ("Tumpety Listing").  The Second was titled "Unbranded Singing I Am A Gummy Bear Musical Gummibär Soft Plush Doll Toys Kids X-Mas Gift" ("Gummibär Listing").  The third listing was titled: "Xefuu 12 Inch Gummy Bear Plush Toy Singing Bear Song Toy Stuffed Animal Doll for Kids Birthday Gift Christmas Party Supplies" ("Xefuu Listing").  All three listings were created by IBSpot itself and appeared simultaneously on the IBSpot website.[4]  At the pleading stage, there is more than a permissible inference that IBSpot determined – to attempt to avoid damages for blatant counterfeiting – to remove "Gummibär" and the *Gummy Bear Song* from the original product tag line and inserted instead the English translation for Gummibär and the name of fictitious Chinese manufacturers.

To deceive consumers into purchasing its products, IBSpot displayed on its website the virtually same mark, except in some instances it used the English translation of Gummibär or Gummy Bear and in some instances used the term Gummibär, as shown below (Compl. Ex. 52):

---

[4] As GBI is a content creator, not a toy manufacturer, even its officially sponsored dolls and toys are manufactured by a third party with a license from Plaintiff and sold under Plaintiff's name. That IBSpot identified a manufacturer of the Counterfeit Dolls does not change that IBSpot was using a counterfeit of Plaintiff's registered trademark to induce consumers into believing that they were purchasing authentic GBI merchandise.

  

Tumpety                Gummibär – I Am A Gummy Bear                Xefuu

"[T]he improper use of another's mark in connection with marketing or sales on a social media platform can give rise to a viable Lanham Act claim". *Adecco USA, INC. v. Staffworks, Inc.*, 2021 U.S. Dist. LEXIS 117445, at *47 (N.D.N.Y. June 23, 2021). Thus, Defendants' display of product images which are identical to the drawing of Gummibär contained in Plaintiff's Registration constitutes under §1127 the use of a counterfeit mark; *i.e.* a "spurious mark which is identical with, or substantially indistinguishable from" Plaintiff's registered mark. To hold otherwise would grant counterfeiters a free license to manufacture and sell products which are identical to the drawing contained in GBI's trademark registration without fear of being responsible for counterfeiting statutory damages.

Because "counterfeit marks are inherently confusing," *Fendi Adele S.R.L. v. Filene's Basment, Inc.*, 696 F. Supp. 2d 368, 383 (S.D.N.Y. 2010), a court "need not undertake a factor-by-factor analysis" under *Polaroid v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961), to demonstrate customer confusion. *Roku, Inc. v. Individuals*, 2025 U.S. Dist. LEXIS 61513 * 17 (S.D.N.Y. March 31, 2025).

## VI.    Plaintiff Properly Alleged Claims Against IBSpot for Unfair Competition and Trade Dress Infringement Under §1125(a)

In addition to protecting registered marks, the Lanham Act, Section 43(a) provides a right of action against any person who "uses in commerce any word, term, name, symbol, or device, or any combination thereof," in a way that "is likely to cause confusion, or to cause mistake, or to

deceive . . . as to the origin, sponsorship, or approval of his or her goods." 15 U.S.C. § 1125(a)(1). The United States Supreme Court has ruled that trade dress qualifies as a "symbol" or "device" for purposes of §1125(a)(1). *Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 209 (2000).

Although the definition of trade dress historically "included only the packaging, or dressing of a product," the Supreme Court ruled that the term's definition has been expanded "to encompass the design of the product." *Id.* "[T]rade dress today encompasses a broad concept of how a product presented to the public looks, including its color, design, container, and all the elements that make up its total appearance." *Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.*, 111 F.3d 993, 999 (2d Cir. 1997).

Plaintiff's Third Claim for Relief, arising under §1125(a)(1), alleges that the Standard Counterfeit Dolls "sold and offered for sale by Defendants are of the same nature and type as the Plaintiff's products sold and offered for sale by Plaintiff and, as such, Defendants' use is likely to cause confusion to the general purchasing public" (SAC ¶144, 72). Further, Plaintiff alleges "Defendants knowingly and willfully use in commerce products that are identical or confusingly similar to Plaintiff's products, applied and used false designations of origin and false and misleading descriptions and representations… to deceive the purchasing public into believing in error that Defendants' products are GBI products" (SAC ¶145).

The SAC also specifies the protectable product design stolen by the Standard Counterfeit Dolls: "Both the Gummibär plush dolls and the Counterfeit Products consist of a green anthropomorphic gummy bear, wearing yellow shorts with white stripes in the same configuration, with white shoes with two lines on top constituting laces and yellow patches on the side of the shoes, with a partially eaten left ear, a circular black nose, an open mouth with a small red tongue on the bottom left corner of the mouth next to a single tooth on the bottom of the mouth and to the

left of the tongue" (SAC ¶73).  The Standard Counterfeit Dolls perform a "thirty-seven (37)-second-long bootleg of the *Gummy Bear Song*" (SAC ¶82).  In sum, the Standard Counterfeit Dolls falsely and explicitly represent "that Defendants' products are GBI products or related products, and/or that Defendants' unlawful products are authorized, sponsored, approved, endorsed or licensed by Plaintiff and/or that Defendants are affiliated, connected or associated with Plaintiff, thereby creating a likelihood of confusion by consumers as to the source of Defendants' Products." (SAC ¶145).

The SAC illustrates the shocking identicality between the product design of Plaintiff's plush dolls (on the left) and the Standard Counterfeit doll (on the right):



### A.  Legal Standard

To prevail on a trade dress infringement claim under §43(a) of the Lanham Act, a party must show (1) that the trade dress is valid and entitled to protection, and (2) that the defendant's use of the trade dress is likely to cause consumer confusion. *Tushbaby, Inc. v. Jinjang Kangbersi Trade Co.*, 2024 U.S. Dist. LEXIS 198535, at *6 (S.D.N.Y. October 30, 2024) (Furman, J.).  The SAC contains sufficient factual allegations to satisfy each of these allegations at the pleading stage.

**B.  Trade Dress Validity**

For a trade dress to be protectable it must be "distinctive and not generic." *Id.*, 2024 U.S. Dist. LEXIS 198535, at \*7.  An unregistered trade dress is valid if it is either "inherently distinctive" or has "acquired distinctiveness through secondary meaning in the public eye." *Id.*  "A mark has acquired 'secondary meaning' when, in the minds of the public, the primary significance of a product feature . . . is to identify the source of the product rather than the product itself." *Christian Louboutin S.A. v. Yves Saint Laurent Am. Holding, Inc.*, 696 F.3d 206, 216-17 (2d Cir. 2012).

Here, the trade dress of the Gummibär doll has acquired distinctiveness through secondary meaning.  In determining secondary meaning, courts consider several factors including, "(1) advertising expenditures, (2) consumer studies linking the mark to a source, (3) unsolicited media coverage of the product, (4) sales success, (5) attempts to plagiarize the mark, and (6) length and exclusivity of the mark's use." *Tushbaby, Inc.*, 2024 U.S. Dist. LEXIS 198535, at \*10-11.  "[N]o single factor is determinative, and every element need not be proved." *Id.*  Courts "consistently emphasize that the question of secondary meaning is fact-intensive and therefore not suited for resolution at the motion-to-dismiss stage." *Subversive Tools, Inc. v. Bootstrap Farmer LLC*, 2025 U.S. Dist. LEXIS 230032, at \*15 (S.D.N.Y. Nov. 19, 2025).

Here, the SAC pleads sufficient facts to show that the Gummibär's product design has acquired distinctiveness through secondary meaning.  Gummibär is one on the most watched animated characters on YouTube, with eight to twelve million video views each day and an estimated more than thirty billion total views (DE 3-4 ¶¶7-10).  GBI has been exploiting the character for more than fifteen years.  The character's popularity has led to the development of an animated web series watched around the globe, a DVD film and press coverage regarding the development of a feature film.  The distinctiveness of Gummibär's product design is confirmed by

the relentless counterfeiting of Gummibär's plush dolls on dozens of e-commerce storefronts. This incessant "intentional copying is persuasive evidence of secondary meaning." *New York City Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 330 (S.D.N.Y. 2010).

Additionally, Plaintiff has sufficiently pleaded enough facts to make a plausible claim of non-functionality at the motion to dismiss stage. *Axis Imex, Inc. v. Sunset Bay Rattan, Inc.*, 2009 U.S. Dist. LEXIS 2667, at *7 (N.D. Cal. Jan. 7, 2009) (The "inquiry into whether a product is functional . . . is fact intensive with multiple factors for the Court to consider," and "facts going to that functionality analysis cannot be resolved at the motion to dismiss stage but must await summary judgment or trial.").[5]

Trade dress protection may not be asserted for product features that are functional. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 775 (1992). As the Supreme Court explained: "in general terms, a product feature is functional, and cannot serve as a trademark, if it is essential to the use or purpose of the article or if it affects the cost or quality of the article." *Traffix Devices v. Mktg. Displays*, 532 U.S. 23, 32 (2001) (internal quotations omitted). In *Two Pesos*, "the Court at the outset made the explicit analytic assumption that the trade dress features in question (decorations and other features to evoke a Mexican theme in a restaurant) were not functional" because the "trade dress in those cases did not bar competitors from copying functional product design features." *Traffix Devices*, 532 U.S. at 33.

Similarly, the functional product features of the dolls in question consist of the generic shape of a teddy bear and a button that when pressed plays music. These functional aspects of the dolls are *not* part of the trade dress at issue. Rather, the trade dress consists of the creative and

---

[5] Under 15 U.S.C. §1115(b)(8), whether plaintiff's mark is "functional" is an affirmative defense to a trade dress infringement claim.

unique appearance of the Gummibär plush doll. Quite simply, there is no credible, nonfrivolous claim that the Gummibär plush doll's product design is "functional".

### C. Consumer Confusion.

Likelihood of confusion exists where "numerous ordinary prudent purchasers are likely to be misled or confused as to the source of the product." *Star Indus., Inc. v. Bacardi & Co.*, 412 F.3d 373,383 (2d Cir. 2005). Judge Friendly outlined factors in *Polaroid Corp. v. Polarad Elecs. Corp.* that have been consistently used within the Second Circuit to determine whether a likelihood of confusion exists. 287 F.2d 492, 495 (2d Cir. 1961). The non-exclusive factors are (1) the strength of the mark, (2) the degree of similarity between the two marks, (3) the proximity of the products, (4) the likelihood the prior owner will bridge the gap, (5) actual confusion, (6) the defendant's good faith in adopting the mark, (7) the quality of the defendant's product, and (8) the sophistication of the buyers. *Id*. Application of the *Polaroid* factors entails "fact-specific determinations not suitable for resolution on a motion to dismiss." *Subversive Tools, Inc.*, 2025 U.S. Dist. LEXIS 230032, at *19.

Here, consideration of the Polaroid factors at the 12(b)(6) stage strongly favors Plaintiff. The Gummibär product design/trade dress is strong given Gummibär's immense popularity. The Standard Counterfeit Doll and the Gummibär plush doll are identical. Further, the "proximity of the products" favors Plaintiff because both products target young children and are sold online. Significantly, as discussed above, IBSpot engaged in bad faith in selling a product identical to Plaintiff's product. In fact, the actual confusion has been so extensive that it has hampered Plaintiff's "efforts to arrange for legitimate distribution of its products through retail stores" (DE 3-4, ¶50). Taken together, these considerations adequately support a plausible likelihood of confusion assertion at the pleading stage.

### VII.    *Dastar* Does Not Require Dismissal of Plaintiff's Trademark Claims

Defendants claim that Plaintiff's trademark claims must be dismissed pursuant to *Dastar Corp. v. Twentieth Century Fox*, 539 U.S. 23 (2003).  In *Dastar*, the Supreme Court "declined to recognize a "reverse passing off" cause of action where a producer made minor edits to a television series that had been, but was no longer, protected by copyright, and released the series as its own." *Bach v. Forever Living Prods. U.S., Inc.*, 473 F. Supp. 2d 1110, 1116-18 (W.D. Wash. 2007).  The Supreme Court held that Fox, the creator of the original television series, could not bring a Lanham Act claim contesting Dastar's failure to credit the idea.  *Dastar* held that the Lanham Act's prohibition against falsely designating the "origin" of "goods" prohibits falsely designating "the producer of the tangible goods that are offered for sale, and not . . . the author of any idea, concept, or communication embodied in those goods." 539 U.S. at 37.

*Dastar* is inapplicable because Plaintiff's product design claim does not "merely serve as a duplicate of its copyright claim."  *General Sci. Corp. v. SheerVision, Inc.*, 2011 U.S. Dist. LEXIS 100216, at *6-7 (E.D. Mich 2011).  In *Dastar*, "the Supreme Court held only that a plaintiff cannot bring a Lanham Act claim for reverse passing off based solely on an allegation that a defendant appropriated the plaintiff's communicative content."  *Advance Loc. Media LLC v. Cohere Inc.*, 2025 U.S. Dist. LEXIS 223808, at *31 (S.D.N.Y. Nov. 13, 2025).  *Dastar* would be applicable if Plaintiff claimed that Defendants created an infringing music video.  In sharp contrast, Plaintiff claims that Defendants infringed Plaintiff's Registered Trademark and its protected trade dress to sell toys and products that deceived consumers into believing that they were purchasing dolls licensed by or affiliated with Plaintiff.

### VIII.   IBSpot Is Liable As A Direct Infringer.

Defendants compare themselves to digital marketplaces such as Amazon, which act as "a neutral intermediary between consumers and third-party vendors," and thus are not liable for the

sale of infringing goods absent evidence of their knowledge of the infringement. *Ohio State Univ. v. Redbubble, Inc.,* 989 F.3d 435, 440 (6th Cir. 2021); *King Spider LLC v. 884886 CH Store*, 2024 U.S. Dist. LEXIS 166907, at *6 (S.D.N.Y. Sept. 17, 2024) (Furman, J.) (explaining the knowledge requirements to sustain a contributory infringement claim against Alibaba).

"One key distinction between a direct seller" and "a mere facilitator of sales" is "the degree to which the party represents itself, rather than a third-party vendor, as the seller, or somehow identifies the goods as its own." *Redbubble*, 989 F.3d at 448. Thus, an "online marketplace like eBay that clearly indicates to consumers that they are purchasing goods from third-party sellers" is not a seller a retailer. *Id*. On the other hand, a party "who sells products directly to a consumer at a brick-and-mortar store is indisputably a seller." *Id*. (*citing Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc.*, 453 F.3d 377, 381 (6th Cir. 2006) (the Lanham Act does not "restrict liability to those who actually create, manufacture or package the infringing items" but rather applies to defendants that have used the goods in commerce and there is "no clearer use of goods in commerce than offering them for sale")).

Hence, Plaintiff's claims against IBSpot are for direct liability given: i) IBSpot's identification of itself as the direct seller; ii) IBSpot's sole responsibility for the decision to sell the Counterfeit Product on the website; and iii) IBSpot's unilateral conduct in creating the three sales listing for the Counterfeit Product. Thus, Defendants' arguments that Plaintiff cannot show their knowledge of the manufacturer's infringement or their control over the manufacturer are completely irrelevant to Plaintiff's claims for direct trademark infringement.

Plaintiff asserted claims of secondary liability against IBSpot in the alternative and in case IBSpot later asserts facts in its answer or in discovery which claim that IBSpot was not acting as the direct seller. Nevertheless, the Court should stay all briefing of secondary liability claims until

the United States Supreme Court decides *Cox Commc'ns, Inc. v. Sony Music Ent.*, No. 24-171, 145

S. Ct. 2841, 2025 WL 1787701, at *1 (U.S. June 30, 2025).  In *Cox*, the Court granted certiorari

on the question whether "a service provider can be held liable for 'materially contributing' to

copyright infringement merely because it knew that people were using certain accounts to infringe

and did not terminate access, without proof that the service provider affirmatively fostered

infringement or otherwise intended to promote it."  *Id.*[6]  To promote judicial economy, Judge

Garnett in this Court recently stayed claims of contributory trademark and copyright infringement

against Cloudflare (an internet service provider) until the Supreme Court resolves *Cox*.  *See*

*Nextgen IP Mgmt., LLC v. Cloudlfare, Inc.*, 2025 U.S. Dist. LEXIS 220479, at *2 (S.D.N.Y. Nov.

5, 2025) (staying briefing on secondary liability claims under the copyright and trademark statutes

pending resolution of *Cox*).  Plaintiff respectfully requests that this Court do the same.

### IX.    Plaintiff Properly Alleged Against EveryMarket Claims of Trade Dress Infringement & Unfair Competition Claims In Violation Of The Lanham Act, 15 U.S.C. § 1125(a).

Plaintiff asserted only a single claim under the Lanham Act against EveryMarket for trade

dress infringement and unfair competition in violation of §1125(a).  EveryMarket also sold a green

anthropomorphic bear that sang the *Gummy Bear Song*.  On its website, EveryMarket identified

itself as the Seller of the infringing doll.  Thus, the Court should sustain Plaintiff's claim under

§ 1125(a) against EveryMarket for the same reasons that it should sustain Plaintiff's § 1125(a)

claim against IBSpot set forth above.

Nevertheless, EveryMarket argues that the trade dress infringement claim is weaker against

it because the doll sold by EveryMarket lacks some of the details that the Standard Counterfeit

---

[6] The December 1, 2025 oral argument confirmed that the Supreme Court is contemplating revising the standards for secondary liability of internet actors.

Doll copied from the Gummibär plush doll. For instance, instead of a partially eaten ear, the EveryMarket doll has a curved ear. The EveryMarket doll's green torso does not wear yellow shorts (or any garments). The EveryMarket doll's white shoes do not have two lines across the top. While the EveryMarket doll smiles, it does so with its mouth closed, as opposed to showing a tongue and a single tooth. The omission of these character details was done solely for economic reasons – *i.e.*, as a cheaper way to rip off Gummibär – as evidenced by the fact that these omitted character details were replaced with generic choices. In other words, EveryMarket sold a watered down version of the Gummibär plush doll instead of selling an anthropomorphic green gummy bear plush doll (that sang the *Gummy Bear Song*) that purportedly embodied a different character.

Nevertheless, EveryMarket's purpose was clearly to rip off Gummibär. The product listing's main selling point is a link to a video of the doll singing the *Gummy Bear Song*. Further, EveryMarket explicitly connects its product to the Gummibär character – as depicted in the videos watch billions of times – by explicitly referencing that kids "love this bear cartoon." After all, what other green anthropomorphic bear cartoon character sings the *Gummy Bear Song*? Given the compelling similarities in the overall look of Plaintiff's doll and EveryMarket's doll, along with EveryMarket's undeniable intent to infringe, whether there is sufficient evidence of consumer confusion between the two dolls is a fact-intensive question to be resolved by a jury. Thus, questions about the similarity of the product design of the two dolls require "fact-specific determinations not suitable for resolution on a motion to dismiss." *Subversive Tools, Inc.*, 2025 U.S. Dist. LEXIS 230032, at *19.

### X.    Plaintiff Properly Asserted a Claim for Unfair Competition.

"The standards for unfair competition claims under federal and New York law are the same as those governing trademark infringement claims under the Lanham Act, 'except the common law [unfair competition claim] requires a showing of bad faith or intent.'" *Turn on Prods. v. Almost*

*Famous Apparel, LLC*, 2019 U.S. Dist. LEXIS 64328, at *7 (E.D.N.Y. April 12, 2019). Defendants seek a dismissal of Plaintiff's unfair competition claims on the basis that Plaintiff fails to sufficiently allege their "bad faith or intent."

Plaintiff incorporates its above discussion about the Defendants' willful infringement under the Copyright Act to debunk these meritless claims. In short, Defendants are extremely sophisticated entities that generated hundreds of millions of dollars in sales. Nevertheless, Defendants unilaterally scouted out these infringing products on Amazon, and offered them for sale in their names at twice the price, without conducting the slightest diligence as to copyright or trademark clearance. In fact, Defendants never even communicated with the Amazon sellers. Defendants' active participation in the infringement, combined with their reckless disregard of Plaintiff's intellectual property rights, and their sophistication, properly demonstrates their bad faith.

## **CONCLUSION**

Plaintiff respectfully requests that Defendants' motions be denied in their entirety.

Dated:   December 5, 2025

> Respectfully submitted,
>
> **KAGEN, CASPERSEN & BOGART PLLC**
>
> /s/ Russell Bogart
> Russell Bogart
> rbogart@kcbfirm.com
> Stuart Kagen
> skagen@kcbfirm.com
> Joshua C. Gillette
> jgillette@kcbfirm.com
> 551 Madison Avenue, 12th Fl.
> New York, NY  10022
> Telephone:    (212) 880-2045
> Facsimile:    (646) 304-7879
> *Attorneys for Plaintiff*
> *Gummybear International, Inc.*

## **WORD COUNT CERTIFICATION**

Pursuant to Local Civil Rule 7.1(c) and the Court's November 17, 2025 Order (DE 92), I certify that this document contains 8,916 words, excluding the caption, any index, table of contents, table of authorities, signature blocks, or any required certificates.

/s/ Russell Bogart
Russell Bogart