UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GUMMYBEAR INTERNATIONAL, INC.,

                Plaintiff,

   v.

SOONOVA, LLC et al.,

                Defendants.

Case No.
1:25-cv-04832-JMF

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR PREJUDGMENT ATTACHMENT AND SECURITY FOR COSTS**

**KAGEN, CASPERSEN & BOGART PLLC**
551 Madison Avenue, 12th Fl.
New York, NY  10022
Telephone:     (212) 880-2045
Facsimile:      (646) 304-7879
*Attorneys for Plaintiff*
*Gummybear International*

1

Plaintiff Gummybear International Inc. ("GBI" or "Plaintiff") submits this reply memorandum in further support of Plaintiff's cross-motion with respect to Defendants Number (36) Harbrot Toys Co., Ltd ("Harbrot") and (40) Sharp Cow, (41) PPWOUU, and (53) PIVIWN (collectively, "Defendants") (i) for a prejudgment attachment under Fed. R. Civ. P. 64(a) and New York CPLR § 6201; and (ii) for security for costs under S.D.N.Y. Local Civil Rule 54.2.

## PRELIMINARY STATEMENT

Plaintiff's cross-motion (DE 102) demonstrated that the Court should issue an Order attaching $49,838.41 frozen in Defendants' accounts with Walmart (the "Frozen Funds") pursuant to New York's prejudgment attachment statute, CPLR 6201 *et seq*. Defendants' opposition to Gummybear's cross-motion is stunning in its concessions. Defendants do not contest that: i) the four corporate Defendants have the same ownership; ii) the four e-commerce storefronts at issue are simply different tradenames through which the same true party in interest conducts business; iii) Defendants sold counterfeit Gummibar plush dolls on the four different storefronts *in seriatim* for more than a year; iv) those dolls infringed Plaintiff's registered copyright of the *Gummy Bear Song*; and v) Defendants' responses to Plaintiff's discovery requests contained no evidence that Defendants ever investigated the trademark and copyrights at issue (DE 103, p. 3). Nor do Defendants contest that their four storefronts at issue are deceased or that there is no trace of the Defendants' currently conducting business in the United States in the names of the four tradenames at issue (DE 103, p. 3).

Instead, Defendants raise a series of meritless legal claims, debunked below.

2

I.       **Plaintiff's Motion For A Prejudgment Attachment Should Be Granted.**

Plaintiff's cross-motion demonstrated that GBI satisfied all the requirements to obtain a prejudgment attachment of the Frozen Funds under CPLR Rule 6212(a).[1] In fact, Defendants admit that Plaintiff satisfied the first two requirements to obtain a prejudgment attachment under CPLR 6212(a), *i.e.*, that Plaintiff has a cause of action and that Plaintiff will succeed on the merits (DE 103, p. 4). Indisputably, the third requirement is satisfied here because Defendants admittedly are "foreign corporation(s) not qualified to do business in the state" under CPLR 6201(1). Defendants' answers did not assert any counterclaims.

Additionally, Plaintiff's cross-motion showed that the amount of the attachment is appropriate. First, Plaintiff marshaled substantial authority applying $50,000 in statutory counterfeiting damages, ***per defendant***, or more, for the selling of counterfeit plush dolls in violation of the Lanham Act (DE 103, p. 5). Thus, under this authority – which Defendants' opposition completely disregards – this Court only would need to find that each Defendant will likely be liable for a mere $12,500 in counterfeiting damages. Additionally, Plaintiff argued (and Defendants do not dispute) that Plaintiff is entitled to a separate award for Defendants' copyright infringement of the *Gummy Bear* Song (DE 103, p.5). As Plaintiff contended, Defendants' copyright infringement will likely be deemed to be willful under Second Circuit authority given their literal reproduction of the extremely popular *Gummy Bear* Song without conducting any diligence into their right to do so (*Id.*, p. 4).

---

[1] As set forth previously, CPLR 6212 authorizes prejudgment attachment upon Plaintiff showing that: "there is a cause of action, that it is probable that the plaintiff will succeed on the merits, that one or more grounds for attachment provided in section 6201 exist, and that the amount demanded from the defendant exceeds all counterclaims known to the plaintiff." CPLR Rule 6212.

In opposition, Defendants argue that a prejudgment attachment remedy under CPLR 6201 is not available "where the Lanham Act provides for the remedy of restraining assets" (DE 112, p. 4). This contention is foreclosed by Judge Marrero's ruling in *Mattel, Inc. v. Entities Doing Bus. as Unicorn Element at the URL unicornelement.net*, 2021 U.S. Dist. LEXIS 106188, at *5-6 (S.D.N.Y. June 4, 2021), which issued a prejudgment order attaching the infringers' accounts with PayPal and other e-commerce platforms pursuant to CPLR 6201. As in *Mattel*, a prejudgment attachment is necessary to secure Plaintiff's likely monetary judgment. Further, as Judge Marrero recognized, Fed. R. Civ. P. 64 provides that "every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment." Hence, under Rule 64, New York CPLR 6201 is available to a plaintiff in a trademark and copyright infringement case. *Id*. at *5.

*Gilead Sciences, Inc. v. Safe Chain Solutions, LLC*, 684 F. Supp.3d 51 (E.D.N.Y. July 28, 2023), cited by Defendants, is not to the contrary. In *Gilead*, Plaintiff established that its equitable claim for illicit profits "may be as large as $37.7 million" and the assets frozen under an injunction were valued at about $30 million. *Id*. at 73. Given that the assets being frozen were far less than the amount of profits that were subject to disgorgement, the Court denied the motion to modify the injunction. As the funds remained frozen under the injunction, there was no need for the Court in *Gilead* to decide whether a prejudgment attachment otherwise would have been available to restrain the funds. Here, the facts are completely dissimilar because the instant Defendants' provable sales on the four disclosed storefronts is significantly lower than both the amount frozen and the size of GBI's likely monetary judgment.

Defendants also unpersuasively claim that Plaintiff asks this Court to issue it a "blank check" in terms of statutory damages (DE 112, p. 4). Defendants ignore the extensive authority

4

awarding statutory counterfeiting damages of $50,000 or more per defendant selling counterfeit plush dolls (DE 103, p. 6).  Nor do Defendants contest that Plaintiff is entitled to a separate statutory damage award for the copyright infringement of the *Gummy Bear Song*.  As Defendants recklessly infringed the hit *Gummy Bear Song* without conducting any diligence whatsoever, their willful infringement enables Plaintiff to seek a damages award of up to $150,000 per defendant under 17 U.S.C. § 504(c).  *See Twin Peaks Productions, Inc. v. Publications Intern., Ltd.*, 996 F.2d 1366, 1382 (2d Cir. 1993) (willfulness standard requires that the defendant knew its conduct was infringing or perhaps recklessly disregarded the possibility).  Defendants disregard that it has long been established that for statutory damages to be "an effective sanction for enforcement of copyright policy," they must be awarded "not merely to compel[] restitution of profit and reparation for injury[,] but also [be] designed to discourage wrongful conduct." *F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 233 (1952).

     Defendants' claim that GBI failed to demonstrate an "identifiable risk" that Defendants will not satisfy a judgment is meritless.  Defendants' interrogatory and document responses established their willful copyright infringement and counterfeiting, and their Opposition does not contest that point.  Accordingly, the inherently unlawful nature of Defendants' willful infringement creates a risk that Defendants will not satisfy a judgment.  *See, e.g.*, *Seiko Epson Corp. v. Nelson*, 2021 U.S. Dist. LEXIS 211699, at *8 (C.D. Cal. Mar. 31, 2021) ("the inherently deceptive nature of the counterfeiting business makes it highly likely that 'Defendants will hide or transfer their ill-gotten assets beyond the jurisdiction of this Court unless those assets are restrained'"); *Reebok Int'l Ltd. v. Marnatech Enterprises, Inc.*, 737 F. Supp. 1521, 1527 (S.D. Cal. 1989), *aff'd*, 970 F.2d 552, 563 (9th Cir. 1992) ("[d]ue to the international aspect of the defendants' business, the Court is concerned that unless assets are frozen, defendants may hide their allegedly ill-gotten funds");

5

*Chanel, Inc. v. Sunus Online Group, LLC*, 2014 LEXIS 206053, at *10-11 (C.D. Cal. Jan. 15, 2014) (defendants' "blatant violations of trademark laws" consisting of the sale of counterfeit products online creates a "likelihood that Defendants would transfer or hide the illegally obtained assets in order to avoid a judgment in this action"). This risk is aggravated here by Defendants' business model of selling their infringing products on multiple fictitious storefronts which are now all deceased.

Strikingly, Defendants fail to rebut this demonstration of risk by introducing any evidence to the contrary. Defendants do not point to any business that they conduct in New York in the name of the four Defendant entities or in the name of other undisclosed storefronts. Defendants do not even represent that they will pay the damages award if the prejudgment attachment is not granted.

As the Second Circuit held, "Where, however a statutory ground for attachment exists and both need and likelihood of success are established, its discretion does not permit denial of the remedy for some other reason, at least absent extraordinary circumstances and perhaps even then." *Capital Ventures International v. Republic of Argentina*, 443 F.3d 214, 222 (2d Cir. 2006). Accordingly, this Court should issue an Order attaching the Frozen Funds pursuant to CPRL 6201.

II.     **Plaintiff's Motion for Security for Costs Should Be Granted.**

Alternatively, if the Court decides that Plaintiff is not entitled to a prejudgment attachment, the Court can restrain the Frozen Funds because Plaintiff is entitled to security for costs under Local Rule 54.2 (DE 103, pp. 7-8).

In response, Defendants claim that only that they should be able to take advantage of Local Civil Rule 54.2. This argument contradicts the express language of Local Civil Rule 54.2 which provides that the Court "may order ***any party*** to file an original bond for costs or additional

security…" Local Civil Rule 54.2 (emphasis added). In *Kensington Int'l, Ltd. v. Republic of Congo*, 2005 U.S. Dist. LEXIS 4331, at *1 (S.D.N.Y. Mar. 18, 2025), Judge Preska required the ***defendant*** there to pay into the Court the amount of $450,000 as security for costs.

Defendants' reliance on *Pfizer, Inc. v. Y2K Shipping & Trading Inc.*, 207 F.R.D. 23 (E.D.N.Y. Nov. 30, 2021) is misplaced. There, the Court observed that the plaintiff's request for costs was undermined by the fact that "the corporate defendant is a New York corporation and the individual defendant is a resident of New York." *Id*. at 25. Additionally, the assertion that the defendant failed to appear for a deposition was in bad faith because defendant had suffered a heart attack and had provided a full day of testimony before the heart attack. *Id*. Moreover, the *Pfizer* court was skeptical that the plaintiff could demonstrate any entitlement to an award of attorney's fees under the Lanham Act which is only available in "exceptional cases."

This case is completely dissimilar. First, Your Honor has held that an award of attorneys' fees provides "compensation and deterrence" in the "infringement context" where the infringement was willful. *Antetokounmpo v. Costantino*, 2021 U.S. Dist. LEXIS 239266, at *22 (S.D.N.Y. Dec. 15, 2021). Additionally, Defendants are not present in New York, much less the United States, and have no assets or ongoing business in the United States. Defendants' claim that they are "small online sellers," and would therefore suffer hardship if costs are imposed, is unsupported by any disclosure of tax returns, financial statements, or any real evidence as to the true operator of four interrelated Defendants, much less the true operator's resources. Moreover, Plaintiff has demonstrated that the amount of the Frozen Funds are fixed (therefore obviating a concern about runaway attorneys' fees) and likely constitute a fraction of the attorneys' fees and costs to be incurred if Plaintiff prosecutes this case to a judgment.

Hence, the equities here greatly favor Plaintiff, and the issuing of an award of costs under Rule 54.2.

## CONCLUSION

The Court should grant Plaintiff's cross-motion for prejudgment attachment and security for costs.

Dated:	December 23, 2025

Respectfully submitted,

**KAGEN, CASPERSEN & BOGART PLLC**

/s/ Russell Bogart
Russell Bogart
rbogart@kcbfirm.com
Stuart Kagen
skagen@kcbfirm.com
Joshua C. Gillette
jgillette@kcbfirm.com
551 Madison Avenue, 12th Fl.
New York, NY  10022
Telephone:	(212) 880-2045
Facsimile:	(646) 304-7879
*Attorneys for Plaintiff*
*Gummybear International, Inc.*

## WORD COUNT CERTIFICATION

Pursuant to Local Civil Rule 7.1(c), I certify that this document contains 1,891words, excluding the caption, any index, table of contents, table of authorities, signature blocks, or any required certificates.

/s/ Russell Bogart
Russell Bogart
