UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X
                              :

GUMMY BEAR INTERNATIONAL, INC.,      :

                              :

           Plaintiff,        :

                              :        25-CV-4832 (JMF)

      -v-                :

                              :      MEMORANDUM OPINION
SOONOVA, LLC et al.,             :         AND ORDER

                              :

          Defendants.     :

                              :
-----------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

Plaintiff Gummy Bear International, Inc., created Gummibär, a singing and dancing animated gummy bear character perhaps best known for the song and music video titled "I am a Gummy Bear," which has been viewed over four billion times on YouTube alone. In this case, it accuses sixty-six Defendants of selling through online storefronts counterfeit Gummibär plush toys that play a "bootleg" recording of the hit song, in violation of the Copyright Act, the Lanham Act, and state law. ECF No. 68 ("SAC"), ¶¶ 3, 8, 115-183. On June 13, 2025, the Court issued a temporary restraining order that, among other things, froze all assets in Defendants' storefront accounts and required Plaintiff to post a $25,000 bond. ECF No. 17 ("TRO"), at 9-13. On July 17, 2025, the Court converted the temporary restraining order into a preliminary injunction, which, among other things, maintained the asset freeze. ECF No. 29 ("PI"), at 2-6, 11. As relevant here, the preliminary injunction has frozen $49,838.41 in four Defendants' Walmart accounts: $17,065.45 for HARBROT TOYS CO., LTD., ECF No. 91-1, ¶ 11; $3,374.04 for PIVIWN, ECF No. 91-2, ¶ 11; $17,599.74 for PPWOUU, ECF No. 91-3, ¶ 11; and $11,799.18 for Sharp Cow, ECF No. 91-4, ¶ 11. Together, these Defendants (the

"Appearing Defendants") move to modify the preliminary injunction, arguing that the asset freeze should be reduced to $1,491.34, which is allegedly the total revenue generated by the Appearing Defendants from the sale of the counterfeit plush toys. *See* ECF Nos. 90, 91 ("Defs.' Mem."), at 2.

Plaintiff does not dispute that, in general, an asset freeze "should be confined in scope to the likely *profits* of counterfeiting activity." *Klipsch Grp., Inc. v. Big Box Store Ltd.*, No. 12-CV-6283 (AJN), 2012 WL 5265727, at *5 (S.D.N.Y. Oct. 24, 2012) (Nathan, J.). Instead, it cross-moves for prejudgment attachment of the full amount of the Appearing Defendants' frozen assets and argues that the Appearing Defendants' motion should then be denied as "essentially moot." ECF No. 103 ("Pl.'s Mem."), at 7. Under Rule 64(a) of the Federal Rules of Civil Procedure and Section 6201 of the New York Civil Practice Law and Rules, "[a]n order of attachment may be granted in any action . . . where the plaintiff has demanded and would be entitled to . . . a money judgment against one or more defendants . . . when . . . the defendant is a nondomiciliary residing without the state, or is a foreign corporation not qualified to do business in the state." N.Y. C.P.L.R. § 6201(1). A plaintiff seeking an order of attachment under these provisions "must show 'that there is a cause of action, that it is probable that the plaintiff will succeed on the merits, that one or more grounds for attachment provided in Section 6201 exist, and that the amount demanded from the defendant exceeds all counterclaims known to the plaintiff.'" *Cap. Venture Int'l v. Republic of Argentina*, 443 F.3d 214, 219 (2d Cir. 2006) (quoting N.Y. C.P.L.R. § 6212(a)). A plaintiff must also "demonstrate[] a need for the attachment." *Id.* at 223 (citing N.Y. C.P.L.R. § 6223). Notably, the Second Circuit has instructed that "[w]here . . . a statutory ground for attachment exists and both need and likelihood of success are established, [the Court's] discretion does not permit denial of the remedy . . .

2

absent extraordinary circumstances and perhaps even then." *Id.* at 222.

Here, there is no dispute that a statutory ground for attachment exists and that Plaintiff has established a likelihood of success on the merits. First, a statutory ground for attachment exists because all the Appearing Defendants reside in China and are not qualified to do business in New York. *See* SAC, Schedule B, at 51. And second, the Court has already found twice that Plaintiff has established a likelihood of success on the merits of, at the very least, its claims under the Copyright Act and Lanham Act. *See* TRO 4-8; *see generally* PI. As to the former, Plaintiff owns exclusive rights to the Gummibär song, SAC ¶¶ 54-58, and is likely to establish that the Appearing Defendants copied and distributed a reproduction of that song, ECF No. 114, at 3; *see* SAC ¶¶ 66, 77-83, 163. As to the latter, Plaintiff owns the Gummibär mark, *id.* ¶¶ 56-59, and is likely to prove that the Appearing Defendants have, in an inherently confusing way, used the mark to advertise, promote, sell, and distribute the counterfeit plush dolls, *id.* ¶¶ 68-98. Notably, the Appearing Defendants do not even attempt to argue otherwise. *See generally* ECF No. 112; *see* ECF No. 114, at 3. Nor do they assert any counterclaims.

That leaves only whether prejudgment attachment is needed to secure payment of an eventual judgment. Prejudgment attachment "serves to protect the plaintiff against defendant's ability to pack his bags . . . and remain at his . . . residence outside the reach of New York enforcement procedures." *Owens v. Taliban*, No. 22-CV-1949 (VEC), 2022 WL 1090618, at *5 (S.D.N.Y. Apr. 11, 2022) (quoting *ITC Ent., Ltd. v. Nelson Film Partners*, 714 F.2d 217, 221 (2d Cir. 1983)). "Where jurisdiction over the defendant is conceded and attachment is sought only to secure a judgment," as here, *see* ECF No. 112, at 5-6, "a reviewing court must determine whether the defendant has assets within the State that could satisfy a judgment and whether petitioner's fear that the judgment will not be satisfied is reasonable," *TAGC Mgmt., LLC v.*

*Lehman*, 842 F. Supp. 2d 575, 586 (S.D.N.Y. 2012) (cleaned up).  "Attachment under New York law solely for security purposes is appropriate only where it appears likely that a plaintiff will have difficulty enforcing a judgment."  *Id.* at 586-57 (cleaned up); *cf. Mattel, Inc. v. Unicorn Element*, No. 21-CV-2333 (VM), 2021 WL 2292918, at *4, 7 (S.D.N.Y. June 4, 2021) (granting attachment of Trademark and Copyright defendants' assets after first issuing a TRO).

Here, the Court finds that a prejudgment attachment of at least the amount frozen is needed to secure payment of an eventual judgment.  For starters, Plaintiff is likely to secure statutory damages exceeding $12,500 per Appearing Defendant — which, in total, exceeds the amount frozen.  *See* SAC, "Prayer for Relief," ¶¶ 4-5, 8; ECF No. 114, at 3-4.  The Lanham Act permits a party to recover statutory damages of "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just."  15 U.S.C. § 1117(c)(1).  Further, if the infringement is willful — which, given "the similarity between the products sold and the genuine products," the infringement here almost certainly would be, *Mattel, Inc. v. AnimeFun Store*, No. 18-CV-8824 (LAP), 2024 WL 4635327, at *6 (S.D.N.Y. Oct. 30, 2024) — a court may award up to "$2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just."  15 U.S.C. § 1117(c)(2).  Under the Copyright Act, a plaintiff can recover statutory damages up to $30,000 per work infringed — and up to $150,000 per work infringed if the infringement was willful.  *See* 17 U.S.C. §§ 504(c)(1), (2).  Exercising their "broad discretion" to determine damages under these provisions, *Mattel, Inc.*, 2024 WL 4635327, at *6, courts have routinely awarded statutory damages of $50,000 or more *per defendant* in cases like this, *see, e.g., King Spider LLC v. FoShanShiBingJieHaoYi*, No. 24-CV-5673 (JMF), ECF No. 55, at 1-2 (S.D.N.Y. Dec. 9, 2025); *Mattel*, 2024 WL 4635327, at *7; *Ontel Prods. Corp. v. Auto Mall*, No.

4

17-CV-5190 (AT), 2017 WL 11569558, at *6 (S.D.N.Y. Nov. 20, 2017).

Additionally, if the Court were to reduce rather than attach the Appearing Defendants' assets that are currently frozen, there is a high likelihood that Plaintiff would be unable recover whatever amount in statutory damages the Court is likely to award. That risk inheres in the unlawful nature of the Appearing Defendants' conduct. *See, e.g.*, *Roller Rabbit LLC v. Shein*, No. 25-CV-10005 (JGK), 2025 WL 3527198, at *4 (S.D.N.Y. Dec. 9, 2025) ("In light of the inherently deceptive nature of the counterfeiting business, and the likelihood that Defendants have violated federal trademark laws, Plaintiff has good reason to believe Defendants will hide or transfer their ill-gotten assets beyond the jurisdiction of this Court unless those assets are restrained."); *accord Seiko Epson Corp. v. Nelson*, No. 21-CV-320 (JWH), 2021 WL 5033486, at *4 (C.D. Cal. Mar. 31, 2021) (same); *Reebok Int'l Ltd. v. Marnatech Enters., Inc.*, 737 F. Supp. 1521, 1527 (S.D. Cal. 1989) ("Due to the international aspect of the defendants' business, the Court is concerned that unless assets are frozen, defendants may hide their allegedly ill-gotten funds"), *aff'd*, 970 F.2d 552, 563 (9th Cir. 1992); *Chanel, Inc. v. Sunus Online Grp., LLC*, No. 13-2194 (JGB), 2014 WL 12558780, at *3 (C.D. Cal. Jan. 15, 2014) ("Defendants' blatant violations of trademark laws" consisting of the sale of counterfeit products online creates a "likelihood that Defendants would transfer or hide the illegally obtained assets in order to avoid a judgment in this action"). It is compounded by the fact that the Appearing Defendants' online storefronts are now closed, that "[n]o trace of the Defendants exists currently on Walmart.com or any other e-commerce platform," Pl.'s Mem. 2, and that the Appearing Defendants do not appear to have any assets in the United States other than the frozen funds. In light of these facts, the Court finds that Plaintiff's "fear that the judgment will not be satisfied is reasonable." *TAGC Mgmt.*, 842 F. Supp. 2d at 586.

5

In short, the Court GRANTS Plaintiff's motion for prejudgment attachment of the frozen funds. In light of that, the Court vacates that portion of the preliminary injunction order that froze the Appearing Defendants' assets and DENIES as moot the Appearing Defendants' motion to modify the preliminary injunction to reduce the amount of assets frozen. (The preliminary injunction order otherwise remains in full effect.) The $25,000 that Plaintiff posted as security for the temporary restraining order and preliminary injunction is hereby deemed to be an undertaking for the prejudgment attachment. *See* N.Y. C.P.L.R. § 6212(b); *see also 180 Life Scis. Corp. v. Tyche Cap. LLC*, 188 N.Y.S.3d 53, 55 (N.Y. App. Div. 1st Dep't 2023); *N.Y. Dist. Council of Carpenters Pension Fund v. KW Const., Inc.*, No. 07-CV-8008 (RJS), 2008 WL 2115225, at *6 (S.D.N.Y. May 16, 2008) (finding an undertaking of $50,000 to be appropriate where "plaintiffs seek to attach defendants' assets up to the amount of $1,114,185.18" (listing cases)).[1] No later than April 29, 2026, Plaintiff shall submit a proposed Order consistent with this Memorandum Opinion and Order.

The Clerk of Court is directed to terminate ECF Nos. 90 and 102.

SO ORDERED

Dated: April 22, 2026
New York, New York

_____
JESSE M. FURMAN
United States District Judge

---

[1] "[I]f it is finally decided that the plaintiff was not entitled to an attachment . . . [its] liability shall not be limited by the amount of the undertaking." N.Y. C.P.L.R. § 6212(e).